**NEW YORK LIFE INS. CO. v. COHEN et al.**

No. 2851.

District Court, N. D. Ohio, E. D.

July 12, 1930.

Garfield, Cross, McGregor, Daoust & Baldwin, of Cleveland, Ohio, for plaintiff.

David Perris, of Cleveland, Ohio, for defendant.

WEST, District Judge.

This is a suit to cancel two policies insuring the defendant, Louis Cohen, against death and total disability. Application was made for the insurance on June 29, 1928, the policies were dated July 6, and were delivered on July 20. The next day Mr. Cohen became insane, and remains so. If the policies are valid, disability claims have matured for a considerable amount, for which judgment is prayed in the answer.

The written applications were attached to and became part of the policies. In them Mr. Cohen answered in the negative questions as to whether he had consulted a physician for or suffered from any ailment or disease of the brain or nervous system. These answers were untrue in fact, for the evidence discloses that on January 16, 17, and 18, 1928, he had a rather serious attack

of some nervous disorder, and his physician, Dr. Rubin, was called in to see him. According to the doctor, Cohen appeared to be irritated, angry, and quite nervous; he freely told the doctor what the trouble was, saying that a week or so before he had met some man at a wedding; that he greatly disliked this person, and the incident had completely upset him. Dr. Rubin prescribed bromides, thinking this was all that was required. On the 18th, however, Dr. Drysdale, a skilled neurologist, was called in consultation. This physician found Mr. Cohen much depressed, restless, and sick, without physical reason to account for it—as the specialist said, it was a mental situation. However, he thought it sufficient to prescribe quieting medicines to induce sleep, and that, if that did not answer, the man should go to a sanitarium; but it does not appear clearly that Cohen was so advised. Dr. Drysdale was not called again, and Mr. Cohen seemed to make a prompt and thorough recovery. According to the evidence, he returned to his work at once and continued at his store steadily without further symptoms of trouble until July 19.

Considering his sudden seizure on July 21, since when he has unquestionably been insane, it is now easy to see that there was a probable connection between the earlier disturbance in January and that of July. But even Dr. Drysdale, who testified for complainant, with his large experience, was not able to say definitely that this connection existed or to what extent the earlier trouble foreshadowed the later.

Following the requirements of Gen. Code, § 9391, that such answers are not defensive in an action to recover on a policy unless it be clearly proved that they were not only material, but willfully false and fraudulently made, the amended bill alleges that such was their character, and that Mr. Cohen on June 29, the date of the applications, was suffering from mental disturbance, and that he had been treated for brain and nervous trouble, as he well knew when he made his answers.

■■■ I am unable to find, and in fact do not believe, that Mr. Cohen either in January or June, 1928, thought or understood that he was suffering from any disorder of the brain or nervous system, either when Dr. Drysdale called on him or later. Certainly the proof is wholly insufficient to satisfy a court that, when he gave the answers which now turn out to be incorrect, he knew them to be false and thereby intended to deceive the insurance company. Counsel for the

complainant say that the applicant also omitted to disclose the consultations with the doctors in January. But again it is not shown that this omission was willfully false or fraudulent. The evidence including the nature of Mr. Cohen's trouble, its duration, the medical treatment he received, and the character of his recovery, does not satisfy me that the occurrences of January were in his mind at all on June 29. On the whole evidence his answers should be disregarded as immaterial. See New York Life Ins. Co. v. Wertheimer (D. C.) 272 F. 730, 734, and cases cited. The agent had difficulty in persuading Cohen to take the $5,000 policy. Defendants' Exhibit A. For more than five months preceding his applications he worked at his store constantly, and always appeared to be in good health. On the issue of fraud I find in favor of the defendants.

■ The applications contained the following: "It is mutually agreed as follows: that the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination."

The proof shows that on July 19, 1928, the day previous to the delivery of the policies, Mr. Cohen consulted and was treated by Dr. Rubin for a disturbance of the stomach.

Much of the argument has been over complainant's contention that this prevented the insurance taking effect. In the view which the court takes, it is not necessary to decide whether this was such a consultation and treatment as had that result, for in my opinion the policies put the insurance in effect on July 6, 1928, and the subsequent consultation and treatment did not avoid them.

The amended bill avers that the applications were attached to and made part of the policies. Together they constitute the contracts. But as to the effective date of the insurance they contain inconsistent provisions. Each application contains a direction by the applicant to date the policy as of the date it is written, together with the provisions quoted above; and in each policy the following is found: "This contract is made in consideration of the application therefor and of the payment in advance of * * *. the receipt of which is hereby acknowledged, constituting the first premium

and maintaining this policy for the period terminating on the sixth day of July, Nineteen Hundred and Twenty-Nine, and of a like sum on said date and every twelve calendar months thereafter during the life of the insured. * * * This policy takes effect as of the sixth day of July, Nineteen Hundred and Twenty-Eight, which day is the anniversary of the policy. * * * In witness whereof the New York Life Insurance Company has caused this contract to be signed this sixth day of July, Nineteen Hundred and Twenty-Eight"—followed by the signatures of the president and secretary.

According to the applications the insurance could not take effect until delivery of the policies and payment of the first premiums. According to the policies themselves they took effect July 6, 1928, and were to continue in force for one year at least. The provisions cannot be reconciled; one or the other controls. This would appear to be a case where the intention of the parties upon this feature of the contracts is in doubt, bringing into operation the rule that "in case of ambiguity in a life insurance policy, that construction is to be adopted which is most favorable to the insured," as announced in Mutual Life Ins. Co. v. Hurni Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102, and many other cases. A further rule, which seems reasonable and which the Supreme Court of Iowa applied in Goodwin v. Provident Savings Life Assurance Soc., 97 Iowa, 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411, is that, when there is a conflict between the provisions of the policy and the statements contained in the application, the former controls. In that case the application definitely excluded suicide from the risks covered, and the policy contained a two-year incontestable clause, except for fraud in obtaining the policy. It was held that suicide after two years did not prevent recovery. See, also, Anderson v. Mutual Life Ins. Co., 164 Cal. 712, 130 P. 726, Ann. Cas. 1914B, 903.

The condition of the applications that the insurance shall not take effect unless the policies be delivered, and the first premiums paid during Cohen's lifetime, is not inconsistent with anything in the policies. It imports no time, and, so far as it was concerned, if delivery and payment were made, the insurance would go into effect at any time agreed upon by the parties.

The result above indicated would also be reached on the theory that, while the company had the right to insist upon Cohen's stipulation in his applications respecting the earliest date the insurance would become effective, it could also waive this provision, and did so by causing policies executed by its executive officers and containing the provisions recited above to be delivered to him, and collecting the first premiums to maintain the insurance for the period terminating July 6, 1929. It is not a question of waiver by unauthorized delivery, or by an agent without authority; the waiver was by the president and secretary, through policies executed by them, upon delivery and collection of the premiums by a fully authorized agent.

The case of Jones v. New York Life Ins. Co., 69 Utah, 172, 253 P. 200, holds that in such a case there is no waiver—that waiver of the terms of a contract presupposes the existence of the contract.

Here it is true the company had no contract prior to delivery of these policies, but it had Cohen committed by his applications to a provision respecting the taking effect of the insurance, which was for its benefit. When it delivered and collected for policies containing provisions directly in the teeth of this feature of the applications, I cannot see how it can avoid the waiver. It is not merely that the policies were dated as they were; that signifies little, if anything. The definite express statements over the signatures of the chief officers of the company, as to when they took effect and how long the first annual premium kept them in force, are the important matters. A material feature of the applications concerned the earliest date when the insurance could become effective, and the company had full knowledge of this provision. If, as a necessary result of abandoning such features, the stipulation that consultation at any time after the medical examination and up to delivery of the policies was also abandoned in part, the company should not escape the direct consequences of such abandonment because it was not aware of the consultation. It is not a case of two independent provisions, waiver of one of which did not waive the other without knowledge as to the second. But rather a case where waiver of the primary provision—that the insurance would not become effective until delivery, etc.—by execution and delivery of policies which by their terms took effect at an earlier date, necessarily implied waiver of the incidental provision or condition precluding effective insurance, if there had been consultation and treatment at any time prior to deliv-

ery. In the Jones Case the Utah court thought that waiver must have resulted, if at all, from "the fact that the agent who delivered the policy was authorized to waive the conditions or was authorized to enter into a new contract of insurance." It did not consider the effect of the execution by the company's chief officers of a policy which by its terms could only take effect on a day prior to delivery; in fact, whether such a policy was before it does not appear—nothing being shown except the date of the policy, which did not necessarily make it inconsistent with the provisions of the application as to when it should become effective. And speaking of the application, the court said: "It is not however, as we understand appellant's argument, seriously contended that these provisions are not binding upon the insured." That the terms of the policy played very little, if any, part in the decision is plain from the court's remark after saying that there was a conflict of authority, many cases supporting the waiver, that the order under review protected the company "in the rights reserved to it in the application" and did "not deny to appellant any relief she can rightfully claim under the wording of the application and the proven facts."

In Whipple v. Ins. Co., 222 N. Y. 39, pages 42, 43, 118 N. E. 211, 212, involving waiver of a condition precedent requiring payment of the first premium, the court says: "The application is a proposition or request for the contract of insurance between the applicant and the company, the statements of which upon its acceptance by the company bind the applicant and create correlative rights to the company. The company may relinquish or waive any of those rights. The obligations or rights of the applicant or of the company arising through the application and its acceptance cannot be restricted or affected by any provision of the policy, as a contract, until the policy has taken effect and become a contract between the parties."

Cohen's proposition for insurance was not accepted by the company; the policies it prepared and delivered purported to put the insurance in force at a time different from that fixed in the applications. Complainant cannot claim that its right under the applications was not relinquished by the policies on the doctrine of the above case, which requires them to have gone into effect in order to have that result. For when upon payment of the premiums they were finally delivered, the policies simultaneously became completed contracts effective as of their dates, and accomplished the waiver or relinquishment.

■ Waiver is not pleaded by defendants, but, as the suit is to cancel the policies, with the burden on complainant to show that the insurance did not take effect, and the waiver appears on the face of the bill and exhibits attached, that omission is not important.

■ I do not think it necessary, however, to resort to the doctrine of waiver or estoppel, as the case really depends upon the intention of the parties as shown by the applications and policies, in connection with the averment of the bill that the latter were delivered and paid for.

Johnson v. Am. Cent. Life Ins. Co., 212 Mo. App. 290, 249 S. W. 115, was a case where the policy seems not to have provided when the insurance should commence or end, but fixed the date of premium payments. The application stated that each insurance year would end on November 16, and that there would be no contract until delivery of the policy and payment of the premium. A binding receipt stated the insurance would be in force from date of approval of the application by the medical examiner. Holding that the provision of the application that insurance should end on November 16 did not control as to when it was to begin, to the exclusion of other provisions of the contract, the court regarded the time fixed for beginning as at least ambiguous, and construed the contract effective at the date of the delivery of the policy and payment of the premium, on December 18, that being the construction most favorable to the insured.

I think that for like reasons this insurance must be construed as taking effect, in the language of the policies, "as of the sixth day of July, Nineteen Hundred and Twenty-Eight."

In New York Life Ins. Co. v. Horton, 9 F.(2d) 320 (5 C. C. A.) the agent had no authority to deliver the policy under the circumstances of the illness of the insured, and the case turned on this. No such issue is made here; no want of authority on the part of the agent is alleged.

New York Life Ins. Co. v. Gay, 36 F. (2d) 634 (6 C. C. A.) did not involve the questions now presented. The application dated March 13, 1923, contained a condition similar to the one here as to when the insurance should become effective, but with an obscure provision added, relating to dating the insurance back to take effect as of the

date of the application. Possibly because of that the insured and not the company seems to have relied upon the condition, hoping, I suppose, to establish that the policy was in effect on March 13 and six days before the consultation and treatment. The court held, however, that, aside from any stipulations in the condition, the applicant, who before March 20, the date of the policy, as well as before its delivery on April 29, had consulted physicians for cancer of the stomach requiring immediate treatment, was guilty of such fraud in failing to disclose this fact, as to invalidate the policy.

■ Coming now to the determinative question: How is the language, "and then only if the applicant has not consulted or been treated by any physician since his medical examination," to be construed? That it must be construed is certain. Execution and delivery by complainant of policies, which, as the court now finds, put the insurance in effect on July 6, make it impossible to give the words the meaning intended when the applications were signed. They express a condition precedent to the effectiveness of any insurance. Consequently they cannot be allowed to refer to something occurring after the insurance became effective. The company could have no legitimate concern with such subsequent event, unless it was fraudulent. The words cannot be construed as a condition subsequent, invalidating the contract of July 6, on July 19, the date of the consultation, for that too would violate their plain purpose.

The parties agreed that, if consultation and treatment occurred within a certain period after the medical examination, the insurance would not take effect. What is the period? To what date does the language, "has not consulted or been treated," refer? I think that a reasonable construction which gives effect to all the words used will refer this language to the effective date of the insurance as fixed by the policies. And that the conditions in Mr. Cohen's applications must be held to mean that, if policies were delivered by the company and the first premiums paid by the applicant in his lifetime, the insurance would take effect according to the terms of the policies, and then, i. e., in that event, only upon the further condition that the applicant had not, before the time they were made effective and after his medical examination, consulted or been treated by any physician.

Another construction suggests itself, that the condition should be held to mean that

the contracts of insurance would not come into existence unless and until the policies were delivered, etc. As there is a distinction between an insurance contract coming into existence, and the taking effect of the insurance provided for in the contract, there is no warrant to hold they mean the same thing; and such construction is not permissible.

The consultation with Dr. Rubin occurred on July 19, thirteen days after the insurance took effect, and did not come within the condition as above construed, even though it took place before delivery and payment.

■ Had Mr. Cohen's illness of July 19 been of a character to indicate serious impairment of mental or physical health, it would be necessary to decide whether it was a fraud upon the company for him to accept the policies after the date upon which the insurance was made to take effect, without full disclosure. That would be a different question than was present in the Gay Case, where consultation occurred before the date of the policy, and presumptively before the insurance became effective. But as Cohen's disorder, according to the evidence, was nothing but a gastric attack, an upset stomach, with the usual accompaniments of nausea, belching, and vomiting, it was not a fraud to omit to disclose it, regardless of when it took place.

The amended bill will be dismissed, and a decree awarded Rose Cohen on her cross-bill.