M. R. EVERETT v. PATRICK O'LEARY.[1]

July 3, 1903.

Nos. 13,495—(163).

**Contract to Insure—Breach.**

A person may maintain an action to recover damages for the breach of a contract to insure his property against loss by fire, and the measure of damages, in case of the destruction of the same, is the value thereof, up to the amount for which it was agreed that insurance and indemnity should be procured. The relationship established by such an agreement seems to be that of principal and agent.

**Statute of Limitations.**

Applying the general rule that a cause of action for breach of contract accrues immediately upon the happening of the breach, although actual damage resulting therefrom may not occur until afterwards, it is *held* that the right of action accrues and the statute of limitations commences to run at the expiration of the reasonable time within which the policy should have issued, and not from the time when a fire occurs.

**Same.**

The fact that the party to whom the policy should have been issued did not know that the contract had been violated will not prevent the running of the statute.

**Demurrer.**

Application of the rule that a defect in a pleading must clearly and affirmatively appear therein, in order to subject it to a general demurrer.

Appeal by defendant from an order of the district court for Le Sueur county, Cadwell, J., sustaining a demurrer to the answer. Reversed.

P. J. *Kirwin* and *John Moonan,* for appellant.

T. L. *Everett* and *E. Southworth,* for respondent.

COLLINS, J.

Plaintiff brought an action on a promissory note, with the usual allegations of execution, delivery, and nonpayment, all of which stood admitted by the answer, but defendant therein attempted to set forth

[1] Reported in 95 N. W. 901.

two counterclaims. To these plaintiff demurred generally as to each, and also severally as to both—

> "That the alleged counterclaims * * * did not accrue within six years immediately prior to the commencement of this action, and are barred by the statute of limitations."

1. The first counterclaim, as set forth in the answer, was to the effect that on December 28, 1889, defendant had $1,120.67 on deposit in plaintiff's bank to his credit "as guardian"; that on the same day he borrowed that exact amount from the bank, giving his note therefor, bearing interest at the rate of ten per cent. per annum; that at the same time he entered into an agreement with plaintiff by which the latter agreed to allow ten per cent. interest on the amount deposited, so long as it remained in the bank, and that the amount so accruing as interest on the deposit should pay and off-set the amount accruing as interest on defendant's note; that on January 6, 1893, this agreement was repudiated by plaintiff's cashier; that defendant then paid his note, with all interest due, and then withdrew the deposit; that afterwards, in the year 1899, plaintiff agreed to allow and to pay the interest which according to the agreement was due on the deposit; and that on May 24, 1899, the parties settled, and stipulated that the sum of $483.81 was then due defendant on account thereof, which sum plaintiff then and there promised to pay.

It is argued in support of the demurrer that the counterclaim, as alleged, simply disclosed a plan whereby the defendant, as guardian, and with the assistance of plaintiff, undertook to cheat his ward out of any income from the money, and to appropriate the use of it for his own advantage and profit, in direct violation of the well-known rule that a guardian cannot use trust funds, and reap a personal benefit from such use, and that this scheme clearly and affirmatively appears from the allegations in regard to the payment of interest by plaintiff; the same being a clear violation of the defendant's duty as a guardian, and illegal, because against public policy.

It is true that the guardian cannot profit by any agreement which he has made in his own interest and against that of his ward. Such a contract would be in violation of his duty, and is forbidden by law. If it appeared, as claimed, from the allegations of the answer, that such

was the necessary result of the agreement made by these parties, we should be compelled to hold that the contract entered into was prohibited by public policy and absolutely nonenforceable, but, upon examination of the pleading, we are of the opinion that this does not clearly and affirmatively appear. Fairly construing the answer, it does not seem clear that the contract, as to interest, was intended to and would inure to the benefit of the defendant guardian, or that it was not made for the benefit of the ward. The defects in this pleading relied upon by counsel are not apparent upon its face, and, when this is the condition of a pleading, demurrer will not lie. The subsequent allegations of an accounting and settlement between the parties, and a promise to pay made by plaintiff on May 24, 1899, are sufficient in form; and, if the original contract was lawful and legitimate, the latter transaction and the promise to pay were based upon a sufficient consideration, and were and are enforceable.

2. It was alleged as a second counterclaim that on June 16, 1893, plaintiff was an insurance agent, and agreed to write in, and issue out of, one of the companies he represented, a five-year policy of insurance on defendant's house, insuring it in the sum of $500, and that he was then paid and received the proper premium therefor; that he did not perform his contract, or write or issue the policy of insurance, but wholly failed and neglected so to do; and that on February 11, 1897, three years and eight months after this agreement and payment of the premium, the house burned, whereby defendant was damaged in the sum of $500, which sum he counterclaims in this action.

The question thus raised by the demurrer arises out of our statute of limitations, and must be determined by ascertaining when the cause of action set up and contained in the counterclaim accrued. It is contended by plaintiff's counsel that this was within a reasonable time after the plaintiff was paid the amount of the premium and agreed to issue the policy—concededly, more than six years before the commencement of this action—while defendant's counsel urges that the statute did not begin to run until the house was destroyed by fire in 1897, within the six years.

The premium was paid on June 16, 1893, as before stated; and, under the agreement to issue a policy, it was incumbent upon plaintiff to write and issue it within a reasonable time thereafter. That a person

may maintain an action to recover damages for a breach of a contract to insure his property against loss by fire is well established by the authorities, and the measure of damages in case of the destruction of the premises is the value thereof, up to the amount for which it was agreed that insurance and indemnity should be procured.   Campbell v. American, 73 Wis. 100, 40 N. W. 661, and cases cited.   The relationship established by such an agreement seems to be that of principal and agent.   The right of action in case of a failure to issue a policy of insurance as agreed upon arises out of a breach of the contract to insure, not out of a contract for insurance.   In case of a failure to issue a policy, the right to recover is fully matured when the agreement is violated, and the party to whom it was to be issued is not obliged to wait until his property is destroyed by fire before instituting an action for damages.   The general rule is that a cause of action for a breach of a contract accrues immediately upon the happening of the breach, even though the actual damage resulting therefrom may not occur until afterward.

The cause of action here is a breach of the contract itself, not because a fire has occurred.   If there is no loss of this nature, the measure of damages differs from that applicable in case of loss.   If, when a suit is brought, there has been no destruction by fire, the plaintiff can recover the amount paid as the premium; and, of course, such an action must be brought within the period of six years—a reasonable time being given in which to issue the policy.   The person to whom the policy should have been issued may, however, take chances upon a loss, and, if one occurs, bring his action to recover actual damages; but his right to sue upon a breach of the contract, and consequently the time when that right matures, cannot be made to depend upon the fact of a loss. A cause of action accrues when the holder of the right to bring the action can apply to the court for relief, and is enabled to commence proceedings to enforce his rights, and from this time the statute of limitations is running.   Mast v. Easton, 33 Minn. 161, 22 N. W. 253; Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18.   This rule applies here.

The fact that the defendant did not know that the policy had not been issued would not arrest or prevent the running of the statute.   It was his duty to receive and care for his policy when issued, not the duty of the plaintiff; and, if it was not received by him within a rea-

sonable time, he was sufficiently notified of the plaintiff's failure to do as he had agreed, and of a breach of the contract. It clearly and affirmatively appears from the pleadings that the statute of limitations had run against the demand set up in the second counterclaim.

Order reversed.