## JONES v. NEW YORK LIFE INS. CO.

No. 4404.   Decided Nov. 30, 1926.   Rehearing Denied Feb. 11, 1927.
(253 P. 200).

*Willard Hanson, B. L. Liberman,* and *H. S. Tanner,* all of Salt Lake City, for appellant.

*Pierce, Critchlow & Marr,* of Salt Lake City, for respondent.

GIDEON, C. J.

This is an action on a life insurance policy. The plaintiff, appellant, is the widow of Leon Jones, deceased, hereinafter referred to as the insured. She was the beneficiary named in the policy. It is alleged that defendant, respondent, on the 19th day of January, 1925, made and issued its policy of insurance insuring the life of said Leon Jones. It is also alleged that the first semiannual premium was paid and the policy delivered. The death of the insured, proof of death, and the refusal of payment are likewise alleged. The affirmative defense is that the policy of insurance never took effect and that no contract of insurance was ever entered into between the said insured, Leon Jones, and the respondent company. It is then alleged in some detail how the insurance policy came into the possession of appellant. At the close of appellant's testimony the court sustained a motion for nonsuit and entered its judgment dismissing the action. From that judgment this appeal is prosecuted.

Appellant's testimony was to the effect that on or about the 10th day of January, 1925, the insured signed a written application to the respondent company for a life insurance policy. He was solicited by an agent, one D. A. Heiselt, to make application for the policy of insurance in controversy. The agent resided at American Fork, in Utah County. The insured was at that time employed by the Utah Copper Company at Bingham, in Salt Lake County. The agent

was an aquaintance and friend of the insured. The insured was examined by a physician, and his application, together with the report of the examining physician, was forwarded to the home office of respondent in New York City, N. Y. On the 19th day of January, 1925, the respondent executed its policy of insurance and mailed the same to its agent, Heiselt, in American Fork, for delivery to the insured. On January 21, 1925, the insured became sick and was, on the 22d, removed, under the direction of a physician, to a hospital in Salt Lake City. He was afflicted with spinal meningitis. The insured died on January 28, 1925, from such disease. The policy was received by the agent at American Fork on January 24th. It also appears that some time between the 17th and 20th of January the insured requested a friend of his, a Mr. Smith, whose family resided in Utah county near American Fork, to call upon the agent on a visit to his home and ascertain if the policy had arrived, and if so to pay the first semiannual premium and receive the policy. Accordingly, on the evening of the 24th of January, Mr. Smith called at the home of the agent and was advised by the agent that the policy had on that day been received. The semiannual premium was paid by Mr. Smith and the policy delivered to him by the agent. Mr. Smith subsequently, on the following day, delivered the policy to Mrs. Jones and received from her repayment for the money that he had paid to the agent as the first semiannual premium. It was also testified to by Mr. Smith that at the time he called upon the agent on January 24th, he advised him of the serious sickness with which the insured was then suffering and also that the doctors held out little hope for his recovery. It is testimony that he so advised the agent before the delivery of the policy. The application for insurance contained, among other things, these provisions:

"It is mutually agreed as follows: (1) That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination;

provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium for the insurance applied for in questions 2 and 3, and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under company's rules and standards to the insurance, on the plan and for the amount applied for in questions 2 and 3, at the company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not. * * * (3) That only the president, a vice president, a second vice president, a secretary or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company; and that neither of them is authorized to accept risks or to pass upon insurability."

It is the respondent's contention that as it affirmatively appeared from the appellant's evidence that the insured had consulted a physician and likewise had been treated for a malignant disease before the delivery of the policy and before the payment of the first premium, no contract of insurance ever came into effect or existence between respondent and the insured.

It was within the rights of, and was competent for, the parties to provide in the application under what conditions and at what time the policy should become effective and binding. *Sterling* v. *Lodge*, 28 Utah, 505, 80 P. 375; *White* v. *Metropolitan Life Ins. Co.*, 63 Utah, 272, 224 P. 1106. It is not, however, as we understand appellant's argument, seriously contended that these provisions are not binding upon the insured. The serious contention or claim of appellant is that by the acts of the agent, Heiselt, in delivering the policy and receiving the first premium during the lifetime of the insured and with knowledge of his serious illness, the limitation or right to have the insurance become effective was thereby waived. It is

expressly stated in the application that no one save the president, vice president, second vice president, secretary, or treasurer of the company could in any way make, modify, or discharge contracts or waive any of the company's rights or requirements. That instrument also provided that notice to or knowledge of the soliciting agent or the medical examiner was not notice to or knowledge of the company, and that neither the agent nor the medical examiner is authorized to accept risks or to pass upon insurability. The foregoing were provisions of the application signed by the insured at the time the application was made. There is nothing to show that the insured was induced by any false or erroneous statements as to the meaning of those provisions and it must therefore be presumed that the insured knew the contents of the application and bound himself by the terms therein provided. In other words, the insured was charged with knowledge that no one save the officers enumerated in the application could waive any of the company's rights or requirements and that notice to the soliciting agent was not notice to the company and that the agent was not authorized to accept risks or to pass upon insurability. The first provision of the application quoted was notice to the insured of the conditions necessary to exist in order that the contract of insurance might become effective. It was likewise notice to the applicant that if he desired the insurance to be effective from the date of the application he was required to pay the first premium at that time. The appellant has only such right to claim a contract of insurance as the insured might have had if he were still living. It is difficult, therefore, to see under what theory the appellant can now maintain that a contract of insurance existed upon the life of her husband in the face of the proven fact that the insured had consulted a physician between the date of the application and the delivery of the policy and the payment of the first premium.

It must be conclusive that at the time the application was made there was a meeting of minds upon the conditions un-

der which the policy of insurance should become effective and binding. If the plain language of the application is to be given its ordinary meaning, then the only meeting of minds at that time was to the effect that the policy of insurance should only become binding when delivered under the conditions specified in the application. The application also contained a statement of the condition under which the policy would be in force from the date of the application if after examination the application was accepted and the policy issued. The insured did not see fit to take advantage of that provision of the application. The policy of insurance, as a matter of fact, was not delivered to the insured, or to appellant, under conditions such as were specified and delineated in the application. If the policy of insurance was in force, it must be by reason of the fact that the agent who delivered the policy was authorized to waive the conditions or was authorized to enter into a new contract of insurance. The waiver, if there were a waiver, created a new policy of insurance. It must be clear that the insurance company never had, up until the time of delivery, voluntarily given consent or assent to a contract of insurance under the conditions existing at the time the policy was delivered to Mr. Smith and by him to appellant.

The facts in *Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 137 N. E. 314, are very similar to the facts here. The statements contained in the applications are almost if not wholly identical. The second and third headnotes to the opinion in that case are applicable here, and, in our judgment reflect the better reasoning in determining the rights of the parties under facts similar to those in the instant case. They read:

"The knowledge which an agent receives for which the principal is to be charged must be such as is received while acting for the principal, not for another whose interests may be adverse, and an agent who had promised to pay the first premium for insured was not acting for the insurer when later making such payment, and such agent's knowledge at such time of insured's illness was not the knowledge of the insurer.

"An insurance agent taking an application for insurance has no power or authority to waive conditions in the application that the policy must be delivered to applicant while in good health, and first premium must be paid during good health; such application providing that agent had no power to waive such requirement."

There is no testimony, except by implication, as to the authority or extent of the authority of the agent, Heiselt. He evidently had authority to solicit insurance and to deliver the policy and collect the first premium. The acts of respondent in accepting the application forwarded by him and in mailing to him the policy of insurance is recognition of his agency to the extent of soliciting insurance and delivering the policy and collecting the first premium. That evidently was the extent of his authority. There is nothing to indicate that he was what is usually denominated a general agent, if by the term general agent is understood, as seems to be by some of the authorities, an agent authorized to make a contract for and on behalf of his principal. Clearly Heiselt was not authorized to enter into a contract of insurance on behalf of respondent. To hold that the agent could, by delivery under the conditions shown by appellant's testimony, bind his principal, would in legal effect be a holding that he had a right to make a contract of insurance for his principal. The application in this case distinctly provides that neither the soliciting agent nor the medical examiner "is authorized to accept risks or to pass upon insurability." The respondent company had passed upon the insurability of the insured when it issued its policy of insurance on January 19th upon the condition of health of the applicant at the date of his application, January 10th, and not upon the condition of his health on the date the policy was delivered if that condition of health was then different from what it was on the date of the application.

The doctrine of waiver is hardly applicable to the facts here. The theory of the waiver of the terms of a contract must necessarily presuppose the existence of a valid con-

tract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend that either party can be said to have waived any of the terms or requirements of the contract. In the two opinions of this court strongly relied on by appellant there was in each case an existing contract between the parties at the time of the claimed waiver. *Loftis* v. *Pacific Mut. Life Ins. Co.*, 38 Utah, 532, 114 P. 134; *Ellerbeck* v. *Continental Casualty Co.*, 63 Utah, 530, 227 P. 805. We are not here dealing with the claim of waiver of the terms of an existing contract. The controlling question is, rather, whether there was in fact any contract in effect at the date of the death of the insured. The conditions specifically stipulated in the application are that no contract of insurance should come into existence until the policy was delivered to the insured and the first premium paid, and further, that the insured had not prior to the delivery of the policy consulted a physician.

Appellant has cited, among other cases, the following: *Connecticut Life Ins. Co.* v. *Mullen,* (C. C. A.) 197-F. 299, 43 L. R. A. (N. S.) 725; *Coci* v. *New York Life Ins. Co.*, 155 La. 1060, 99 So. 871; *Grier* v. *Mutual Life Ins. Co.*, 132 N. C. 542, 44 S. E. 28; *Fair* v. *Metropolitan Life Ins. Co.*, 5 Ga. App. 708, 63 S. E. 812; *McClelland* v. *Mutual Life Ins. Co.*, 217 N. Y. 336, 111 N. E. 1062; *People's Fire Ass'n* v. *Goyne,* 79 Ark. 315, 96 S. W. 365, 16 L. R. A. (N. S.) 1180, 9 Ann. Cas. 373; *Virginia Fire & Marine Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846. We have examined these cases. It must be conceded that the conclusions in some of the cases cited support appellant's contention. In many of the cases the facts are not analogous to the facts here. In others the facts are similar. There is lack of unamity and a hopeless conflict in the opinions of the courts on questions kindred to the one presented by this appeal both in the results and in the reasons assigned for the results arrived at by the various courts. It would serve no good purpose to attempt to review the cases in this opin-

ion. They cannot be reconciled. In the language of Brannon, J., in *Maupin* v. *Scottish Union and Nat. Ins. Co.*, 53 W. Va. 562, 45 S. E. 1005, "To attempt anything like a review of them (the cases) in detail, would be only to grope and wander in that wilderness, and in the end lead to bewilderment." We are satisfied that the reasoning of the courts denying the right to recover under facts similar to the facts here is more in conformity with well-recognized rules of the law of contract and agency. The district court's order protects the respondent company in the rights reserved to it in the application by the insured, and does not deny to appellant any relief that she can rightfully claim under the wording of the application and the proven facts in this case.

There are other questions discussed in the briefs of counsel, and that were orally argued, but in view of the fact that we have arrived at the conclusion that no contract of insurance ever became effective, a discussion of those questions here is unnecessary.

Judgment affirmed.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.