## TYLER *v.* CAPITOL INDEMNITY INSURANCE COMPANY

[No. 61, October Term, 1954.]

*Decided January 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Maurice C. Pincoffs, Jr.,* for the appellant.

No brief and no appearance for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant sued the appellee to recover the premium he paid it for a bail bond on the ground that the contract between him and the bail was void *ab initio*. His claim was that the bail had surrendered him to the State but a few days after he had been released from jail. The lower court refused the appellant's motion for summary judgment and granted that of the appellee. No questions of procedure are raised, nor are the facts in dispute. The appeal from the judgment for the defendant below raises questions of law only.

The appellant's declaration was for money had and received. His affidavit, in support of his motion for summary judgment, said that on July 18, 1953, he and the appellee signed a writing, a "purported contract", by which, in consideration of the payment of $200.00, the appellee "agreed to become and remain surety" on a bail bond in the amount of $4,000 in certain cases in the Criminal Court of Baltimore, and thereafter, on July 25, 1953, it became surety and appellant was released from jail. It then states that on July 30, 1953 the appellant was arrested and indicted on another charge and bail was fixed by the Criminal Court of Baltimore at $1,000 additional. The appellee agreed to furnish the new bail but later refused to execute the bond, and returned the additional premium which had been given it. Next, it is said that on August 4, the appellee surrendered the appellant in open court. An amended declaration and motion for summary judgment were filed, which did not refer to the re-arrest but which otherwise were essentially unchanged. The appellee's answer stated that it had a just and meritorious defense to all of the appellant's claim and that there was a genuine dispute as to material facts, in that the agreement "was fully and completely executed and completed by all of the parties" and services were rendered by the appellee in complete accord with the contract. The appellant was released from jail, which completely established the right of the appellee to the

money paid under the contract, according to the appellee's affidavit of defense.

It happens that at the time of the argument of this appeal, there was before us for decision an application by the appellant for leave to appeal from the denial of the writ of *habeas corpus*. It is shown by his application that he was convicted in 1952 in the Criminal Court of Baltimore of forgeries and given a sentence of ten years, which was suspended. While on probation under this sentence, he was charged with the offenses for which the $4,000 bail was furnished by the appellee. Then, when at liberty on that bail, he committed another offense of which he was convicted and given nine months in jail by the Criminal Court of Baltimore. He was arrested on July 30, 1953 on this third charge and since he had remained in jail from the time of his arrest, his nine months' sentence dated from August 1 of that year, although he was tried in November, 1953 and sentence was imposed in January, 1954. At his trial in November, 1953, the State stetted the charges against him in which the appellee had furnished bail.

The appellant argues that the written contract "was absolutely void *ab initio,* since the defendant's promise was illusory and the contract therefore was void for want of mutuality." As has often been pointed out by the text writers, there is much confusion of thought as to the requirement of mutuality, and the decisions reflect it. 1 *Williston on Contracts,* (Rev. Ed.) Sec. 141, observes, as to the usual statement that there must be mutuality, that it: "* * * is likely to cause confusion and however limited is at best an unnecessary way of stating that there must be valid consideration." The learned author continues (p. 506) : "Sometimes the question involved where mutuality is discussed is whether one party to the transaction can by fair implication be regarded as making any promise; but this is simply an inquiry whether there is consideration for the other party's promise. The particular error which is traceable to the misleading use of the word 'mutuality' as a requirement

for the formation of contracts, is a tendency observable in some cases to hold a contract invalid because the obligation undertaken on one side is not commensurate with that undertaken on the other. Especially where one party is given an option, not accorded to the other, of discontinuing or extending performance or of cancelling or renewing the contract or of determining the extent of performance, confusion has arisen. If the option goes so far as to render illusory the promise of the party given the option, there is indeed no sufficient consideration, and therefore no contract, but the mere fact that the option prevents the mutual promises from being coextensive does not prevent both promises from being binding according to their respective terms. A court of equity might indeed refuse to enforce specifically such a contract if it seemed oppressive, but to deny its legal validity is to contradict directly the numerous cases which hold adequacy of consideration is a matter exclusively for the decision of the parties." A similar conclusion is reached by Corbin. See his work on *Contracts,* Vol. 1, Chapter 6, and also, his article on the *Effect of Options on Considerations,* 34 Yale Law Jouranl 571, 583, *et. seq.* In the article, after reviewing, analyzing and giving examples of options to cancel, he says, at page 585: "The conclusion should be drawn that an unlimited option to cancel does not invalidate a contract where it can be shown that it does not wholly defeat consideration."

Reflection on the general nature of the contract to furnish bail, on the usual obligations and rights of the surety, and on the terms of the contract here involved, leads us to conclude that there was consideration on both sides for the undertaking entered into between the appellant and the appellee and that the contract was not void. *Restatement, Security,* Sec. 203, defines bail bonds and in the comment says: "* * * the principal is released from the custody of officers of the law and is considered as being in the custody of a surety of his own selection, whose duty is to assure the principal's subse-

quent appearance." Section 204 in paragraph (1) says the law is that: "The surety on a bail bond may, at his discretion, apprehend and surrender the principal." It adds in paragraph (2) that: "The surrender by a surety on a bail bond of his principal to the proper officer at a proper time and place discharges the surety." The comment states: "If the surety believes that there is danger of the defendant's disappearance, the surety may end his own responsibility by surrendering the defendant to the proper officers. Such an act will not be taken usually unless the surety believes that there is a danger of the principal fleeing the jurisdiction. To enforce such surrender, the surety may personally arrest the defendant within or without the state or may obtain the aid of the offiers of the law to compel such surrender. Since there is a strong public policy in preventing defendants from absconding, the surety is permitted a large discretion as to the steps necessary to effect the defendant's apprehension. In general the surety may do whatever an officer might do with a warrant for the defendant's arrest, even to the extent of making forcible entry into the defendant's home. The surety will incur a liability to the principal only if he takes means unnecessary or improper to effect the arrest and surrender. It is no defense to the principal that he had no intention of absconding or that the surrender itself was unnecessary. The large authority allowed the bail in respect of a defendant is justified by the responsibility imposed upon the surety." The language of an early English case has been quoted from time to time in American decisions and underscores the general concept of the relationship between the bail and the accused: "The bail have their principal always upon a string, and may pull the string whenever they please, and render him in their own discharge." See *Taylor v. Taintor*, 16 Wallace 366, 21 L. Ed. 287 at 290; and 35 Va. Law Review, 496, 500. See also 8 C. J. S. *Bail*, Sec. 87, p. 170.

The contract between the parties in this case provided that "in consideration of the execution by the Company

of such bond or undertaking", the appellant covenanted and agreed with the company that he would pay the premium specified in the application and that "the Company may at any time take such steps as it may deem necessary to obtain its release from any and all liability under any of said bonds or undertakings * * * the Company may secure and further indemnify itself against loss, damages and/or expenses * * * in any manner it may think proper including surrender of the defendant (either before or after forfeiture and/or payment) if the Company shall deem the same advisable". Finally, in capital letters, was included the following: "THE PREMIUM ON THIS BOND IS NOT RETURNABLE".

The assertion by the appellant that the bail bond was void *ab initio* apparently is one that has never been accepted by a court. The contract to furnish the bond, and the bond itself, in the case before us do not vary in any material way from countless similar instruments which have been executed and acted under through the years. The promise of the appellant to pay $200.00 premium was countered by the promise of the appellee to procure his release from jail on the terms agreed upon, which were declaratory of the common law. No question is raised as to fraud or bad faith. It is not suggested that the bonding company at the time of the filing of the bond did not intend to remain as surety until trial, as generally it would have. The appellant was free to set his own value on his release from jail, knowing and agreeing that the right to remain at liberty could be terminated by the surety at any time, and that in such case, the premium would not be returned. We think there was real consideration. The Court of Appeals of New York, in describing the effect of a bail bond in *In re Lexington Surety & Indemnity Co.* (N. Y.), 5 N. E. 2nd 204, said: "Immediately upon the release of the principal after filing of a recognizance, there is imposed upon the surety an obligation, alternative in form but nevertheless existent and continuing. That obligation is either to produce the principal when required by the

court or at such earlier date as the surety may elect or, failing to produce the principal when required by the court, to pay the sum specified in the bond."

Insurance contracts commonly contain provisions for cancellation at the option of the insurer and these provisions usually are held not to make the promise of the insurer illusory. See 45 C. J. S. Sec. 446, p. 80; 6 *Williston on Contracts*, (Rev. Ed), Sec. 1878, p. 5295, where the author says in a note: "A bargain giving a right of cancellation to one party may be an illusory contract * * * but this objection is not applicable to the cancellation provision of an insurance policy." No more, we think, is it necessarily applicable to a bail bond undertaking.

The suit in this case was to recover the entire premium paid, not damages for breach of contract. Where a contract is void *ab initio*, or risk never attached thereunder, or the contract is voidable and has been avoided, and there is no fraud on the part of the claimant, and the contract is not against law or good morals, recovery may be had of premiums paid for a policy or a bond. *Stiegler v. Eureka Life Ins. Co.*, 146 Md. 629, 643; *Brown v. Federal Life Ins. Co.* (Ill.), 187 N. E. 484; *Mailhoit v. Metro. Life Insurance Company* (Me.), 32 A. 989. Cf. *Rothman v. National Mutual Ins. Co.*, 197 Md. 173. The premiums paid under a valid insurance policy or bond on which the insurer has carried the risk, may not be recovered if there is a breach of contract. In that case, the action should be for damages by reason of the breach. *Brown v. Federal Life Ins. Co., supra.*

Although the appellant seemed to recognize this distinction when he sued on the ground that the contract never had been valid, at the argument he contended he would be entitled, in any event, to a proration of the premium and a return of so much thereof as had not been earned at the time of the surrender. We think he has no such right nor claim to other damages. The case would seem to come within the rule that where the insurer has taken upon himself the whole peril, he becomes

entitled to the whole premium, and although this may result in a profit to the insurer, it is just compensation for the danger or peril assumed. The rule was applied in *Crouch v. Southern Surety Co.* (Supreme Ct. of Tenn.), 174 S. W. 1116, where a county treasurer gave bond with a corporate surety for the faithful performance of his duties, paying a premium of $4,000.00 in advance for a year's coverage. He died six months later. His administratrix sued for half of the premium. It was held that there could be no recovery since the risk had attached, and neither it nor the premium could be apportioned. The Court, citing cases and text writers, said that the rule it applied seems not to have been questioned "* * * but has been accepted and applied by the courts as settled law." It was followed in *In re Parker-Young Co.*, 12 Fed. Supp. 987. There, one Scates was appointed trustee of an insolvent corporation and filed a bond in the sum of $100,000. He paid a premium of $1,000 for coverage for a year. Two months later he was removed as trustee by the court because of a conflicting financial interest, which the court thought disqualified him. Suit was brought for the unearned portion of the premium. The court denied recovery and said: "A surety bond is subject to the same rule of law as ordinary insurance policies, and the general rule seems to be that if the contract of insurance is indivisible, once the risk attaches, the premium is considered earned." See also *Mailhoit v. Insurance Company*, (Me.), 32 A. 989, *supra*.

The obligation of the surety on bail bond may be discharged in any of three ways: by the act of God, act of the obligee, or act of the law. *Taylor v. Taintor, supra,* 16 Wallace 366, 21 L. Ed. 287; 8 C. J. S., *Bail,* Sec. 76. If the principal dies, this act of God discharges the surety; if the principal is arrested in the State where the obligation is given and his extradition to another State is granted, the surety would be discharged by act of law. Another example of discharge by act of law is where the principal is arrested on another charge in the State where the obligation was given, and as a result, is in jail

at the time the surety is called upon to produce him. *Restatement, Security,* Sec. 206 (3) ; 8 C. J. S., *Bail,* Sec. 77; and cases annotated in 4 A. L. R. 2d 440. *Restatement, Security,* Sec. 203 (comment c), says that: "The surety's obligation on a bail bond as on any other surety contract is limited to the surety's promise, reasonably interpreted * * *"; and see *Reese v. United States,* 9 Wallace 13, 19 L. Ed. 541, 544.

So, if the appellee had taken no action after the appellant was arrested on July 30, 1953, and had permitted him to remain in jail until he was tried, there could be no claim of damage by the appellant. As we see it, the appellant suffered no damage merely because the appellee chose to surrender him on August 4. He remained in jail after the surrender, just as he would have if there had been none. It is not unusual for surety to surrender a prisoner who is in jail as a result of arrest on another charge. See *Biggnell v. Forrest,* 2 Johnson 482, 3 N. Y. 458; and *Martin v. Wood,* 7 Wendell (N. Y.) 132. It is apparent from the provisions of Code (1951), Art. 26, Sec. 43, that the stetting of a criminal case discharges the bail. If the appellee had not surrendered the appellant earlier, it would have been completely exonerated of any claim against it when the charges were stetted on November 18, 1953. We think the result is not different because of the surrender, which did not change the appellant's position to his detriment. Certainly, the appellant's claim of damages comes with bad grace when the consequences which he says give rise thereto came upon him when he availed himself of the opportunity to commit another crime while at liberty on the bail furnished by the appellee.

The appellant relies on two cases, apparently the only two which have considered the right to return of the premium paid for a bail bond. The first is *Karakey v. Mollohan* (Tex. Civ. App. 1929), 15 S. W. 2d 692. Recovery of the premium paid was allowed there despite the fact that there was no holding that the contract was void from the beginning and no showing of damages.

The basis of the decision was that although the surety had a right under his contract with the State to surrender the principal at any time, his contract with the principal was that he would keep him at liberty until his case came up for trial and the surety had breached this second contract, "in the absence of any agreement that he might do so". The Court seemingly held that if the agreement between the surety and the principal had provided, as between them, that there might have been a surrender, there could have been no recovery. In the case before us, there was an express agreement as to this between the appellant and the appellee, and the case does not help, indeed hurts, the appellant.

The second case is *Jordan v. Knight* (Ala.), 35 S. 2d 178, where recovery was denied on the ground that the conduct of the surety had been justified. The Court cited the *Karakey* case and repeated its finding that as between the surety and the State, the surety had the right to surrender the plaintiff at any time. It added: "But as between defendant and plaintiff, the question as to whether, in doing so, he breached his contract depends upon whether the contract authorized such surrender, or if not whether plaintiff's subsequent conduct was such as justified him in doing so." If the quoted language as to justification correctly states the law—which we need not and do not decide (cf. *Restatement, Security,* Sec. 204, *supra*)—the facts here clearly seem to have justified the surety in surrendering the principal.

The appellant may not recover the premium paid on the bond nor any damages from the appellee.

*Judgment affirmed, with costs.*