Present:  All the Justices

AUTUMN RIDGE, L.P., ET AL.

v.  Record No. 041934  OPINION BY JUSTICE CYNTHIA D. KINSER
                                June 9, 2005
ACORDIA OF VIRGINIA INSURANCE AGENCY,
INC. T/A ACORDIA OF VIRGINIA

       FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
               A. Joseph Canada, Jr., Judge


     The appellants, 12 limited partnerships,[1] brought this

action against Acordia of Virginia Insurance Agency, Inc.

t/a Acordia of Virginia (Acordia), under the Multiple

Claimant Litigation Act, Code § 8.01-267.1 et seq.  The

limited partnerships asserted claims for negligence and

breach of contract due to Acordia's failure to include them

as named insureds on a builders risk insurance policy and

sought recovery of the premiums each limited partnership

had paid.[2]  The circuit court entered judgment for Acordia,

finding that the limited partnerships "can show no damages

for which they have not already been compensated."  We

conclude, however, that, when no loss has occurred that

_____

     [1] The names of the 12 limited partnerships are: Autumn
Ridge, L.P.; Bridgeport, L.P.; Culpepper Landing of SC,
L.P.; Hampton Ridge, L.P.; Madison Ridge, L.P.; Woodbridge
Partners, L.P.; Northwoods of SC, L.P.; Tierra Contenta II,
L.P.; Salem Ridge, Limited Partnership; Sunchase of GA,
L.P.; Tierra Contenta, Limited Partnership; and Woodburn,
L.P.

     [2] The limited partnerships also asserted a claim for
unjust enrichment but later nonsuited that claim.

would have been covered by the requested insurance policy, the measure of damages for failure to procure insurance is the amount paid by the intended insured as the premium. Therefore, we will reverse the judgment of the circuit court.

RELEVANT FACTS AND PROCEEDINGS

The limited partnerships each owned a separate multi-family housing project. The projects were financed by proceeds realized from selling, on the open market, tax credits authorized by various state housing authorities. Because of the financing arrangement, each project was required to provide a "cost certification" to the respective state housing authorities, which included the costs of a builders risk insurance policy.

National Housing Corporation (NHC) performed administrative tasks for the limited partnerships, including, among other things, procuring necessary insurance for them. In that regard, NHC contracted with Acordia, an insurance broker, to purchase a builders risk insurance policy to insure the 12 limited partnerships and each partnership's respective housing project.[3] NHC did not

---

[3]  Acordia also contracted to include in the builders risk insurance policy two other entities that are not parties to this action: Genito Glenn, L.P. and National Housing Building Corporation.  See Acordia of Virginia Ins.

2

own any of the housing projects but, as acknowledged by the parties, acted as the limited partnerships' agent for the purpose of procuring the builders risk insurance policy at issue in this case.

Acordia contracted with Security Insurance Company of Hartford (Security) to provide the requested insurance. The policy named NHC as the "insured" and listed the housing projects owned by the limited partnerships as "covered properties."  The policy, however, did not include the limited partnerships that actually owned the housing projects as "named insureds."  Acordia had no explanation why the limited partnerships were not included as named insureds on the policy and admitted that it had failed to comply with the applicable standard of care, or was negligent or in breach of its contract, by not including the limited partnerships as named insureds on the builders risk insurance policy.  In addition, an adjuster for the company underwriting the builders risk insurance policy stated that the owners of the property and "the people . . . insured [under that policy] were different entities and, therefore, the owners of the property had no insurable

Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 380, 560 S.E.2d 246, 247 (2002) and National Hous. Bldg. Corp. v. Acordia of Virginia Ins. Agency, Inc. 267 Va. 247, 249, 591 S.E.2d 88, 89 (2004).

3

interest under [the] policy."  When asked whether a claim would have been paid to NHC instead of the owners of the projects, knowing that NHC was not the owner, he responded, "Only in a mistake."

Acordia invoiced NHC for the total amount of the premium for the builders risk insurance policy.  NHC paid that sum to Acordia, which then deducted its commission and forwarded the remainder of the premium to Security.  Each limited partnership was supposed to reimburse NHC for its proportionate share of the premium, which was based on the estimated value of each partnership's housing project at the time of completion.[4]

Prior to this action filed by the 12 limited partnerships, Genito Glenn, L.P. (Genito), Autumn Ridge, L.P. (Autumn Ridge), Sunchase of GA, L.P. (Sunchase) and Madison Ridge, L.P. (Madison Ridge) suffered losses at their respective housing projects.  Security paid the losses at Autumn Ridge and Sunchase by issuing checks payable to NHC.  Those checks listed NHC as the "assured." A senior vice-president for Acordia admitted that Security

---

[4]  When a housing project was completed, it was removed from the builders risk insurance policy by an endorsement. Because the premium was paid for an entire year in advance, the endorsements sometimes resulted in premium refunds, which Acordia credited to the account of the named insured, NHC.

paid NHC because Security did not know at the time of payment that the limited partnerships even existed and that they were the owners of the housing projects.  Security denied Madison Ridge's claim because the loss was not a covered loss under the builders risk insurance policy.

When Genito made a claim under the builders risk insurance policy, Security denied coverage on the ground that Genito was not a named insured under the policy.[5] Genito then filed an action against Acordia for its failure to include Genito as an insured on the builders risk insurance policy and successfully recovered economic loss damages for Acordia's negligent performance of its contractual obligations.  Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 277, 380-81, 560 S.E.2d 246, 247 (2002).

When the 12 limited partnerships discovered that they were not listed as named insureds on the builders risk insurance policy for which they claimed to have paid premiums, they filed this action against Acordia.  After hearing evidence ore tenus, the circuit court concluded in a letter opinion, which was incorporated into its final

---

[5]  In a declaratory judgment action, a federal district court held that Genito was not a named insured under the builders risk insurance policy.  Genito Glenn, L.P. v. Security Ins. Co. of Hartford, No. 2:98cv1314 (E.D. Va. Oct. 27, 1999).

5

order, that the "[limited partnerships'] damages in contract [were] limited to [their] losses due to the breach . . . [and they] simply already [had] been restored to the condition in which they would have been had the contract been performed as promised" due to Security's payment of the claims made for losses at the housing projects owned by Autumn Ridge and Sunchase as well as the judgment in favor of Genito against Acordia.  Relying on Link Associates v. Jefferson Standard Life Insurance Company, 223 Va. 479, 291 S.E.2d 212 (1982), the court reasoned that "[w]hen [Genito] chose to pursue recovery for the amount of its denied claim, it foreclosed NHC's option of recovering the consideration it paid for the benefits under the builder's risk policy."  In the circuit court's view, the limited partnerships had accepted the benefits of the builders risk insurance policy "by their acceptance of, and successful action at law for, amounts equal to benefits they would have received under a valid policy."

The circuit court also concluded that the measure of damages for a breach of contract to procure insurance is the amount of loss that would have been subject to insurance coverage and not the return of paid premiums. The circuit court rejected the holding in Ingrams v. Mutual Assurance Society, 40 Va. (1 Rob.) 661, 668 (1843),

6

because, in the court's view, a subsequent case, <u>Virginia First Savings & Loan Association v. Wells</u>, 224 Va. 691, 695, 299 S.E.2d 370, 372 (1983), superseded the precedential value of <u>Ingrams</u>. We awarded the 12 limited partnerships this appeal.

ANALYSIS

The limited partnerships assert several assignments of error. The overriding question, however, is whether the circuit court erred in concluding that the 12 limited partnerships are not entitled to a return of the premiums they claimed to have paid for the builders risk insurance policy as damages for Acordia's admitted breach of contract and/or negligence in failing to procure insurance coverage. To decide that question, we apply certain legal principles regarding contracts of insurance.

A contract of insurance is "'[a]n agreement by which one party for a consideration (which is usually paid in money, either in one sum, or at different times during the continuance of the risk), promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest.'" <u>Cosmopolitan Life Ins. Co. v. Koegel</u>, 104 Va. 619, 624, 52 S.E. 166, 168 (1905); <u>accord</u> <u>Sims v. Commonwealth</u>, 71 S.W. 929, 929 (Ky. 1903); <u>Commonwealth v. Wetherbee</u>, 105 Mass.

7

149, 160 (1870). The risk undertaken by the insurer is an essential element of a contract of insurance, and no premium is due from the insured unless the risk attaches. Smithart v. John Hancock Mut. Life Ins. Co., 71 S.W.2d 1059, 1062 (Tenn. 1934); Huntington Ins. Agency v. County Court of Wyoming County, 127 S.E. 64, 65 (W. Va. 1925). Likewise, if, through no fault or fraud by the insured, the risk never attaches under a policy of insurance, the insurer must return any premium paid by the insured. Kansas City Col. of Osteopathic Med. v. Employers' Surplus Lines Ins. Co., 581 F.2d 299, 301-02 (1st Cir. 1978); Tyler v. Capitol Indem. Ins. Co., 110 A.2d 528, 531-32 (Md. 1955); Parsons, Rich & Co. v. Lane, 106 N.W. 485, 494 (Minn. 1906); Latta v. Farmers County Mut. Fire Ins. Co., 313 S.E.2d 214, 215 (N.C. Ct. App. 1984); see Young Am., Inc. v. Union Cent. Life Ins. Co., 101 F.3d 546, 548 (8th Cir. 1996) (employer entitled to refund of premiums paid under mistaken belief that corporate officers were eligible insureds).

Clearly, a risk never attached as to each of the 12 limited partnerships because they were not included as named insureds on the builders risk insurance policy. See Busby v. Simmons, 406 S.E.2d 628, 630 (N.C. Ct. App. 1991) (the term " '[n]amed insured' has a common sense and

8

explicit meaning[;] [i]t is the named individual (or corporation) on the declarations page of the policy"). Indeed, Security denied Genito's claim because it was not a named insured. Acordia, 263 Va. at 381, 560 S.E.2d at 248. Also, the adjuster for the company underwriting the builders risk insurance policy testified that the owners of the housing projects "had no insurable interest under [the] policy" as issued. Contrary to Acordia's argument, failure to include the limited partnerships as named insureds on the policy was not merely a defect in the coverage or terms of the policy. It was tantamount to no coverage for the limited partnerships, i.e., no contract of insurance. See Acordia, 263 Va. at 390, 560 S.E.2d at 253 (Acordia could not rely on the terms of the builders risk insurance policy that did not include Genito as a named insured). Despite the fact that the risk did not attach, the circuit court concluded that the limited partnerships' measure of damages was the amount of any losses that would have been subject to insurance and not a return of premiums. We do not agree.

In Ingrams, this Court stated the following principles:

> [I]f through mistake, misinformation, or any
> other innocent cause, an insurance be made
> without any interest whatsoever in the thing

9

> insured, . . . the insurer shall return the whole premium . . . . For the premium paid by the insured, and the risk which the insurer takes upon himself, are considerations each for the other; they are correlatives, whose mutual operation constitutes the essence of the contract of insurance. The insurer shall not be exposed to the risk without receiving the premium; nor shall he retain the premium, which was the price of the risk, if in fact he runs no risk at all, though it be by the neglect, or even the fault of the party insuring, that the risk be not run.

40 Va. at 668; see also Mutual Life Ins. Co. of New York v. Brown, 137 Va. 278, 283-84, 293, 119 S.E. 142, 144, 147 (1923) (approving trial court's decision to return premiums to insured after insurance company cancelled policy).

These principles are still valid in Virginia and were not altered by this Court's decision in Wells. There, a mortgage lender had contracted to procure credit life insurance for a borrower. 224 Va. at 692, 299 S.E.2d at 370. The administratrix of the borrower's estate sued the lender for breach of that contract because the lender never forwarded the borrower's application to an insurance company even though the lender collected premiums for the insurance. Id. at 692-93, 299 S.E.2d at 370-71. On appeal, the issue was whether the trial court erred by placing on the lender the burden of proving that the borrower was uninsurable at the time he applied for the credit life insurance. Id. at 694, 299 S.E.2d at 371. The

10

parties agreed that the balance of the borrower's loan would be the measure of damages if the administratrix was entitled to recover.  Id. at 693-94, 299 S.E.2d at 371.  It was in that context that we stated, "where a contract to procure insurance is breached, the measure of damages is the amount of loss which would have been subject to insurance, not the amount of insurance applied for."  Id. at 695, 299 S.E.2d at 372.  There was no issue in Wells as to the measure of damages for breach of a contract to procure insurance when the intended insured has not suffered an actual loss that would have been covered by the insurance.

Thus, we hold that, when the intended insured suffers a loss, the measure of damages for failure to procure insurance is the amount that would have been due under the policy.  However, when no loss has occurred, the measure of damages is the amount paid by the intended insured as the premium.[6]  Enyart v. Transamerica Ins. Co., 985 P.2d 556,

---

[6]  In support of its argument that the measure of damages for failure to procure insurance is the amount the insurer would have paid if the requested insurance had been obtained, Acordia cited Wheaton Nat'l Bank v. Dudek, 376 N.E.2d 633, 636 (Ill. App. Ct. 1978); Kenyon v. Larsen, 286 N.W.2d 759, 764 (Neb. 1980); and Kobbeman v. Oleson, 574 N.W.2d 633, 635 (S.D. 1998).  In each of those cases, the insured had suffered an actual loss.  Thus, we agree that the proper measure of damages in those cases was the amount

11

560-61 (Ariz. Ct. App. 1998); Everett v. O'Leary, 95 N.W. 901, 902 (Minn. 1903); Simpson v. M-P Enters., Inc., 252 So.2d 202, 207 (Miss. 1971). "In case of a failure to issue a policy, the right to recover is fully matured when the agreement is violated, and the party to whom it was to be issued is not obliged to wait until his property is destroyed . . . before instituting an action for damages." Everett, 95 N.W. at 902.

We recognize that, in this case, the 12 limited partnerships seek a return of paid premiums not from the insurer, Security, but from Acordia. That distinction does not change the applicable measure of damages. The cause of action here arose out of a contract to procure insurance and Acordia's admitted negligence and/or breach of that contract by failing to include the limited partnerships as named insureds on the builders risk insurance policy.

The circuit court further erred in concluding that the limited partnerships failed to prove that they had suffered any damages for which they had not been compensated. Because of the payments for losses at Autumn Ridge's and Sunchase's respective housing projects, and the judgment recovered by Genito against Acordia, the court mistakenly

that would have been due under the respective insurance policies.

12

believed that the limited partnerships had been restored to the condition in which they would have been if Acordia had procured insurance listing the limited partnerships as named insureds. Thus, the circuit court concluded that the limited partnerships "should be deemed to have accepted the benefits of the insurance contract to procure insurance by their acceptance of, and successful action at law for, amounts equal to benefits they would have received under a valid policy."

The court apparently reached this conclusion by characterizing the limited partnerships as subsidiaries of NHC. The limited partnerships, however, were not subsidiaries of NHC; instead, they were separate, independent entities, each owning a different housing project. As acknowledged by the limited partnerships in their pleadings and by Acordia at oral argument, NHC acted as the limited partnerships' agent for the purpose of procuring the builders risk insurance policy.[7] See Acordia,

_____

[7] Acordia argued on brief that the limited partnerships cannot claim privity of contract with Acordia and that each can assert a claim against Acordia only as a third-party beneficiary of NHC's contract with Acordia to procure the builders risk insurance policy. Acordia, however, acknowledged during oral argument that its argument on this point was misplaced in light of this Court's decision in Acordia, 263 Va. at 386, 560 S.E.2d at 251, holding that, "when NHC, acting as Genito's agent, contracted with Acordia for insurance . . . , Genito then

13

263 Va. at 386, 560 S.E.2d at 251.  Even if the limited partnerships were subsidiaries of NHC, that status alone would not warrant the circuit court's conclusion that the limited partnerships had been restored to the position in which they would have been if Acordia had fulfilled the contract to procure a builders risk insurance policy as promised.  See Richfood, Inc. v. Jennings, 255 Va. 588, 592-93, 499 S.E.2d 272, 276 (1998) (a subsidiary is a separate corporate entity and that status alone is not a justification for a court to disregard the separate corporate structure).

The situation here is not analogous to that in Link Associates, a case relied on by the circuit court.  There, the controversy involved the financing of a shopping-center development and a lender's commitment for a permanent loan in an amount less than what the borrower had requested.  223 Va. at 481, 291 S.E.2d at 213.  Asserting mutual mistake and constructive fraud, the borrower sought to reform the contract by rescinding certain portions of

---

became a contracting party with Acordia, thereby establishing privity between those two entities."  Thus, we do not address Acordia's argument regarding third-party beneficiaries.

Acordia also argued that NHC had an insurable interest in the various housing projects owned by the limited partnerships and that Security undertook a risk as to NHC. That issue is not before us in this appeal, and we will therefore not address it.

14

ground leases executed by the borrower as security for the permanent financing.  Id.  The issue decided on appeal was whether the trial court had erred in finding that the borrower had waived and ratified certain misrepresentations made by the lender.  Id. at 484, 291 S.E.2d at 215. Finding that there was sufficient evidence to prove that the borrower had waived and ratified any actionable misrepresentations of the lender, we stated with approval the principle that a party cannot accept the benefits of a contract and then seek to be relieved of its obligations. Id. at 488-89, 291 S.E.2d at 218 (citing United States v. Idlewild Pharmacy, Inc., 308 F. Supp. 19, 23 (E.D. Va. 1969)).

In the present case, there was no contract of insurance that provided coverage to the limited partnerships; thus, there was no contract from which they could accept benefits.  Cf. Jones v. New York Life Ins. Co., 253 P. 200, 203 (Utah 1926) (the theory of waiver of the terms of a contract presupposes the existence of a valid contract).  Furthermore, if Acordia had fulfilled its contractual obligation to procure a builders risk insurance policy naming the 12 limited partnerships as insureds, each limited partnership would have its own claim for any loss sustained at its respective housing project.  Any recovery

15

by a particular limited partnership would not have affected the right of another limited partnership to recover fully for a loss at a different housing project.  In other words, the circuit court had no basis to foreclose the limited partnerships from pursuing damages by attributing the recoveries by Genito, Autumn Ridge, and Sunchase to the other limited partnerships.

The final issue is whether Autumn Ridge and Sunchase are entitled to a return of premiums since Security paid for losses sustained at their respective housing projects. Acordia argued that these two limited partnerships accepted the benefit that would have been afforded if they had been listed as named insureds on the builders risk insurance policy and cannot now recover premiums on the basis that the risk never attached.  We disagree.

As we previously stated, there was no contract of insurance as to any of these limited partnerships.  Thus, Autumn Ridge and Sunchase cannot be deemed to have accepted the benefit of insurance or to have waived the failure of Acordia to include them as named insureds on the builders risk insurance policy.  See Silva v. National Am. Life Ins. Co. of California, 58 Cal. App. 3d 609, 618 (Cal. Ct. App. 1976) (waiver presupposes the existence of a valid

contract); <u>Hodge v. National Fid. Ins. Co.</u>, 68 S.E.2d 636, 640 (S.C. 1952) (same); <u>Jones</u>, 253 P. at 203 (same).

However, Autumn Ridge and Sunchase acknowledged on brief that the amount paid by Security for their respective losses should be deducted from the amount of premium each paid. Thus, they should recover only the net amount from Acordia as damages.

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court and remand this case for a determination of the amount of damages which may be due the limited partnerships.

<u>Reversed and remanded</u>.