SHEDD, Circuit Judge,
concurring:
I agree that summary judgment should be reversed, but for reasons different than the majority.
First, in the context of the insurance policy at issue, the term “maintain” is not ambiguous. The fact that “maintain” may have several meanings does not necessarily result in ambiguity, nor is that fact dispositive here; rather, the real question is whether, in the context of a fire insurance policy, it is reasonable to interpret “maintain” as meaning to merely have a sprinkler system in place. See Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 640 (4th Cir.2005) (“The real question, then, is whether, when read in context, a reasonable purchaser of insurance would believe that [interpretation].”). The majority concludes that it is. In my opinion, this is not a reasonable interpretation in light of the fundamental purpose of insurance, which is to allocate risk between the insurer and insured. See Autumn Ridge, L.P. v. Acordia of Virginia Ins. Agency, Inc., 270 Va. 83, 613 S.E.2d 435, 438-39 (2005).
The condition in the Protective Safeguards Endorsement requiring Breton “to maintain” an automatic sprinkler system creates a duty on Breton, which is a condition precedent to coverage. As such, Breton must comply with this condition before the insurance becomes effective. In other words, in order for Graphic Arts to agree to assume the risk of loss resulting from fire, this protective safeguard — a safeguard that would minimize or prevent that risk — must be in place. To read “maintain” as meaning to merely “have” a sprinkler system — regardless of whether it actually works — eliminates the purpose of that duty in allocating risk. Further, such an interpretation renders the condition completely meaningless because in this context having a non-working, non-functioning system is the factual equivalent of having no system at all (for purposes of risk allocation). See TM Delmarva Power, LLC v. NCP of Virginia, LLC, 263 Va. 116, 557 S.E.2d 199, 200 (2002) (“[N]o word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it.”).
Surely, Graphic Arts did not intend to require Breton to have a non-working sprinkler system. See Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 677 S.E.2d 299, 302 (2009) (noting that insurance provisions must be construed to effectuate the parties’ intent). “The point is that context matters,” Resource Bankshares, 407 F.3d at 642, and in this context, the requirement to “maintain” a sprinkler system is not ambiguous — it necessarily means to have a sprinkler system which is in working order.[1]
*609 Second, and independent of the general duty to maintain a sprinkler system as a condition to have coverage, the policy exclusion provides that Graphic Arts “will not pay for loss ... [if Breton] [flailed to maintain [the sprinkler system] ... over which [Breton] had control, in complete working order.” J.A. 771. Leaving aside the lease at this point, this exclusion clearly and independently obligated Breton to keep the sprinkler system in working order to ensure there was coverage. The lease between Breton and Ragan does not change this obligation. Breton controlled the premises as lessor and cannot eliminate its obligation by merely leasing the property to a third party.[2]
Notwithstanding the lease relationship between Breton and Ragan, Breton controlled the sprinkler system under the policy between Breton and Graphic Arts. That Breton somehow would use its status as lessor to construct a barrier to its access to the sprinkler system is of no moment. The lease offers Breton no more excuse than if Breton had thrown away its keys to the control room for the express purpose of defeating the exclusion — Breton’s obligation would still exist. An insured simply cannot take steps to defeat its obligation under the Policy and still claim coverage. See Parrish v. Wightman, 184 Va. 86, 34 S.E.2d 229, 232 (1945) (noting general contract principle that if a party “is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure”). Beyond that, Breton’s position that Ragan had sole control of the sprinkler system is defeated by the actual language of the lease. Under the lease, Breton had “the right to enter the Premises ... to examine the same as well as to make any alterations and repairs .... ” J.A. 1003. That fact underscores Breton had both physical control— as the majority interprets “control” — and legal control over the sprinkler system. Simply put, under the facts and any reading of the policy, Breton was in control of the sprinkler system and was therefore obligated to keep the system in working order.
However, aside from all of this, Graphic Arts conceded during oral argument that there is a question of what constitutes the sprinkler system being “in complete working order.” In light of this concession, I would remand for a resolution of that narrow issue.

. In fact, the conduct of both Breton and Graphic Arts underscores this interpretation of "maintain.” In August 2007, Graphic Arts indicated to Breton’s property manager that the sprinkler system needed to be inspected. J.A. 2618. In response, Breton's property manager informed Graphic Arts that the sprinkler was scheduled to be serviced later that month. Id. —In addition, just weeks before the fire, Graphic Arts sent a letter reminding Breton to have the system inspected. J.A.2017-21. Under the district court’s interpretation of the duty to maintain, these warnings by Graphic Arts — as well as Breton’s response — would have been unnecessary because Breton had fulfilled its duty under the policy by simply having the sprinkler system — whether it worked or not — in place.

. The exclusion’s requirement that the system be “maintain[ed] ... in complete working order” underscores, rather than undercuts, my reading of the general duty to "maintain” a system. Under the majority’s view, the general duty (condition) is read to contrast with the exclusion because the exclusion further elaborates on "maintain.” Such a reading leads to the odd but inevitable result that a non-working system is completely sufficient to satisfy the general duty. Further, notwithstanding any disagreement with the majority about what "maintain” means, the exclusion makes it clear that there will be' no payment for a loss unless the system is in complete working order. Therefore, whether the focus is on the general duty or the exclusion, for Breton to recover under the policy the sprinkler system had to be in working order.