James T. **GELSOMINO**, Appellant,

v.

**ACE AMERICAN INSURANCE COMPANY and Brown & Brown, Inc., Appellees.**

No. 4D14–4767.

District Court of Appeal of Florida, Fourth District.

Nov. 9, 2016.

---

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, and Geoff S. Stahl of Liggio Benrubi, West Palm Beach, for appellant.

Neil Rose of Bernstein, Chackman & Liss, Hollywood, for appellee, Brown & Brown, Inc.

MAY, J.

Litigation over a broker's failure to procure the insurance coverage resulted in a verdict for the plaintiff. The trial court however granted the broker's motion for judgment in accordance with the motion for directed verdict and entered a judgment for the broker. The plaintiff now appeals and argues the trial court erred in granting the broker's motion. We agree and reverse.

The plaintiff's brother owned a business, completing interior construction of hotels, named T & T Contracting. When the plaintiff and his brother began work in the Bahamas, their company was required to be incorporated in the Bahamas. They formed T & T Services and served as the officers and directors of the Bahamian company.

T & T Services needed an insurance policy. The plaintiff was referred to the broker. The plaintiff's brother testified he

told the broker that T & T Contracting was a Florida company located in Jacksonville, and acted as the agent for T & T Services, a Bahamian company.

T & T Contracting paid for the policy. The Certificate of Insurance identified the insured as T & T Services, with a Florida address, but the policy listed T & T Contracting as the insured.

The plaintiff was involved in a car accident in the Bahamas on his way to the airport. He immediately went to a clinic, but ultimately traveled home where he learned he had "broken every bone in [his] foot." The injury required surgery.

The plaintiff called the broker a few days later to report the accident, but the insurer denied the claim because the plaintiff worked for T & T Services, a Bahamian company, and the policy's named insured was T & T Contracting, a Florida corporation.

The plaintiff filed a fourth amended complaint against the broker, alleging negligence in failing to procure the policy for T & T Services. The complaint alleged the plaintiff's brother, and co-manager of T & T Services, contacted the broker to obtain an international insurance policy to cover "general liability, automobile and worker's compensation claims." The broker sold T & T Services an "International Advantage Commercial Insurance Policy" and issued a Certificate of Insurance, naming T & T Services as the insured. The plaintiff alleged he relied upon the Certificate of Insurance. He claimed out of pocket expenses, medical expenses, and lost wages.

The broker answered, denied the allegations, and raised several affirmative defenses, including comparative negligence, failure to mitigate damages, set-off, and asserted that the damages were limited to coverage under the policy. Three days before trial, the plaintiff filed a proposed joint pretrial stipulation with attachments, which indicated that the disputed law or fact issue was whether the broker's negligence caused the plaintiff's loss, injury, or damages.

On the morning of trial, the broker filed a unilateral pre-trial stipulation with attachments. That stipulation indicated the disputed issues were whether: (1) the broker was negligent; (2) the negligence was the cause of injury; (3) the plaintiff failed to mitigate his damages; and (4) the broker was entitled to a setoff. Nothing in the broker's pretrial stipulation raised coverage for the plaintiff's damages as an issue. The plaintiff filed a trial brief on the first day of trial, which identified the following issue: "what amount of money damages fairly and adequately compensates [the plaintiff] for his loss, injury or damage, including any damage he is reasonably certain to incur in the future," past/future medical expenses, and lost earnings/earning capacity.

In his opening, plaintiff's counsel discussed the plaintiff's damages and injuries. "[W]e think it's very clear that this policy was the type of policy that would cover [the plaintiff] for the exact type of damage that he incurred, which was an auto accident during the course and scope of his job, which should have been covered under the workers' compensation portion of the policy." Defense counsel did not mention damages in his opening, except to discuss the plaintiff's settlement with T & T Services. Defense counsel stated that T & T Services had to get insurance in the Bahamas and not the United States, since it was a Bahamian company.

Following the close of the plaintiff's case, the broker moved for a directed verdict on liability, proximate cause, and damages. The motion was deferred until after the close of all the evidence. The broker

argued the plaintiff failed to prove the proper measure of damages, and that damages were limited to the amount of coverage that would have been available had the insurance policy been properly procured. It argued that while the plaintiff presented evidence of medical expenses and lost earnings, there was no evidence about what would have been covered under the policy.[1] It also argued the plaintiff failed to prove he was entitled to workers' compensation benefits.

The plaintiff responded that he submitted a claim for Voluntary Compensation/workers' compensation benefits in Florida, but the insurer denied the claim.[2] He presented evidence of damages through lost wages and past and future medical expenses. He conceded the insufficiency of evidence of future lost earnings. The plaintiff argued the Voluntary Compensation benefits under the policy had a maximum recovery of one million dollars, the damages were recoverable, and the broker asserted as an affirmative defense that the plaintiff was limited to the policy limits. The trial court granted the motion with regard to future wages, but deferred ruling on the other issues.

During its closing, the broker argued the plaintiff failed to present evidence of the benefits he would have received under the policy. It also argued there was no evidence of the total number of weeks of coverage, how much of the medical expenses were recoverable, whether there was a rate structure for medical expenses, and what disability benefits were available.

The jury found the plaintiff proved that the broker was negligent and was a legal cause of the plaintiff's loss, injury, or damage. It found the plaintiff proved "that an International Package insurance policy was available to cover T & T Services for its employees working in the Bahamas, that T & T Services would have secured an International Package policy for its employees working in the Bahamas, and that [the Plaintiff] would have been successful in recovering under that policy." It found T & T Services, T & T Contracting, the plaintiff's brother, and the plaintiff were also negligent. The jury found the plaintiff suffered lost earnings of $73,250; past medical expenses of $10,000; and future medical expenses of $151,370. And, the jury found the broker was 35% at fault.

The broker moved to set aside the verdict and enter judgment in accordance

1. The plaintiff's expert, Dr. Lichtblau, testified to the plaintiff's injuries. He assigned a seven percent whole body impairment rating. He also testified to the types and costs of future medical care. Defense counsel cross-examined Dr. Lichtblau, but did not ask any questions on the measure of damages or Florida's workers' compensation coverage.

2. The policy contained a Voluntary Compensation Endorsement. Voluntary Compensation coverage "applies when you make a claim for bodily injury by accident.... The bodily injury must be injury to your 'employee' and must arise out of and in the course of employment by you."
The Policy also contained Employers Responsibility Coverage with Executive Assistance, which provided:

We will adjust the claim with the "employee" by applying the "workers compensation law" of the "state" you choose when you make the claim. The "state" whose law you choose must be one which is shown in the Declarations. The workplace of the "employee" must be within the "coverage territory."
**We Will Pay Benefits**
We will pay promptly the benefits which would be required of you by the "workers compensation law" of the "state" you choose when making the claim.... "Voluntary Compensation" is "the medical, disability and other benefits prescribed by the 'workers compensation law' of the 'state' you choose when you make a claim."

with its motions for directed verdict, or alternatively for a new trial. It argued no view of the evidence supported a verdict for the plaintiff because he failed to prove the proper measure of damages, which is "what would have been covered had the insurance been properly obtained." It argued the plaintiff did not introduce evidence establishing which state's workers' compensation law applied. Even if Florida's law applied, the plaintiff failed to prove the proper measure of damages. The plaintiff responded that the policy designated Florida as the governing damages state and the broker waived its argument on measure of damages by not objecting to the proof of damages in his argument on the directed verdict motion.

The court granted the motion to set aside the verdict and entered final judgment in favor of the broker. The court cited *Capell v. Gamble*, 733 So.2d 534 (Fla. 1st DCA 1998) and found the plaintiff "failed to set forth any admitted evidence of 'what [damages] would have been covered had the insurance been properly obtained.'" From this order, the plaintiff now appeals.

On appeal, the plaintiff argues he proved, and the jury found, the broker was 35% negligent in procuring insurance coverage. He presented evidence of his economic losses arising from the car accident. It was unnecessary for him to present expert testimony concerning the policy's coverage and Florida's workers' compensation law. It was the broker, who claimed that damages were limited to the policy's coverage, but the broker failed to establish that limitation.

The broker responds that the plaintiff failed to show what benefits would have been covered had a proper insurance policy been procured. It was the plaintiff's burden to prove damages. Although it raised the issue of damage limitation in its pleadings, it was not an affirmative defense.

■ In reviewing a directed verdict, we "must view the evidence and all inferences of fact in a light most favorable to the nonmoving party, and can affirm ... only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." *Frenz Enters., Inc. v. Port Everglades*, 746 So.2d 498, 502 (Fla. 4th DCA 1999). "The same standards apply to a post-verdict motion for judgment in accordance with prior motions for directed verdict and to the appellate court's review of such directed verdicts." *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168, 172 (Fla. 4th DCA 1994) (citation omitted).

■ "An insurance broker may be liable for damages where there is an agreement to procure insurance and a negligent failure to do so." *Bennett v. Berk*, 400 So.2d 484, 485 (Fla. 3d DCA 1981) (citation omitted). "The measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained." *Mondesir v. Delva*, 851 So.2d 187, 189 (Fla. 3d DCA 2003).

The plaintiff first argues the broker's coverage argument is an affirmative defense that it failed to prove. He asserts that because the policy states, "[w]e will adjust the claim with the 'employee' by applying the 'workers' compensation law' of the 'state' you choose when making the claim," the policy controls and the burden is on the broker to prove the plaintiff was not covered or the damages were too high. The broker responds that the burden to prove damages belongs to the plaintiff.

Two cases are instructive: *Mondesir* and *Capell*.

In *Mondesir*, the plaintiff sued the defendant for negligent procurement of an insurance policy when his loss was not

covered by the policy. 851 So.2d at 188. The jury found in favor of the plaintiff and awarded damages. *Id.* The Third District held the plaintiff proved damages.

> At trial, [the plaintiff] submitted a copy of a certificate of insurance issued by [the insurer] which indicates that the fire damage incurred was included in the $300,000 general liability policy. [The plaintiff] introduced an inventory list that he prepared after the fire which reflected the loss of fixtures, as well as merchandise. The value of these damages was also uncontradicted. [The plaintiff] further testified that [the defendant] assured him that he had received the desired coverage. There is thus evidence from which a jury could determine [the plaintiff's] damages.

*Id.* We agree with the Third District that *Capell* is distinguishable from *Mondesir.*

There, the plaintiffs brought a claim for the defendant's alleged negligent failure to procure flood insurance. *Id.* at 534. The plaintiffs prevailed at trial. *Id.* The defendant appealed, arguing the plaintiffs failed to present sufficient evidence of damages. *Id.* at 534. Significantly, the plaintiffs did not introduce the policy or provide expert testimony on what the policy covered. The plaintiffs presented evidence of only the "amount of damages sustained which were not covered by their homeowner's policy...." *Id.* at 535 (footnote omitted).

The First District reversed, stating:

> *The measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained.* Neither the amount of damages caused by the flooding, nor the required amount of flood insurance under the loan commitment would necessarily reflect what items actually would have been covered if flood insurance had been obtained.

*Id.* (emphasis added) (internal citations omitted).

Unlike *Capell,* the plaintiff here proved he sustained an injury in a work-related automobile accident. He proved lost wages and past and future medical expenses through expert testimony. He introduced the policy that the broker negligently procured for the wrong entity. This makes the case similar to *Mondesir* and unlike *Capell,* where no policy was admitted into evidence.

"A directed verdict is improper if 'any evidence' will support a verdict for the non-moving party." *Claire's Boutiques v. Locastro,* 85 So.3d 1192, 1195 (Fla. 4th DCA 2012) (citation omitted). The plaintiff proved the broker breached the standard of care, causing damages to the plaintiff because no policy of insurance provided coverage for the plaintiff's claim. The plaintiff introduced the insurance policy into evidence. The trial court erred in taking the verdict from the jury.

We therefore reverse and remand for reinstatement of the jury verdict and proceedings consistent with this opinion.

*Reversed and Remanded for Reinstatement of the Verdict.*

WARNER, J., and ARTAU, EDWARD L., Associate Judge, concur.