DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE LEXINGTON CLUB COMMUNITY ASSOCIATION, INC.,** and **THE LEXINGTON CLUB VILLAS CONDOMINIUM ASSOCIATION, INC.,**
Appellants,

v.

**LOVE MADISON, INC.** d/b/a **ALEXANDER INSURANCE,**
Appellee.

No. 4D17-1843

[August 15, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward L. Artau, Judge; L.T. Case No. 502007CA018961XXXXMB-AF.

Douglas J. Roberts, Michael E. Stearns and Mark D. Nichols of Stearns, Roberts & Guttentag, LLC, Deerfield Beach, for appellants.

Allison C. Heim, Gina E. Romanik and Marcel M. Flemming of Mintzer Sarowitz Zeris Ledva & Meyers LLP, Miami, for appellee.

MAY, J.

A post-Hurricane Wilma roof repair led to negligence and unjust enrichment claims by two condominium associations ("associations") against an insurance agent that failed to procure a contractually required "Payment and Performance Bond" on behalf of the contractor. From a judgment for the associations, for less than the amount claimed, the associations appeal. They argue the trial court erred in its damages instruction to the jury and in excluding certain evidence. We disagree there was error in the damages instruction given, and while the trial court erred in excluding certain evidence, that error was harmless. We therefore affirm.

Hurricane Wilma caused significant damage to the associations' condominium and townhome buildings. After the hurricane, the associations hired a general contractor and roofing company to re-roof all of the buildings and perform other repairs to the property. The contract was in excess of $6,000,000.

The contract provided:

> 13.1.1 The Contractor shall execute and deliver to the Owner a Payment and Performance Bond in the amount of 100% of the Contract Sum. The attorney-in-fact or other Officer who signs a Payment and Performance Bond for a surety company must file with such Payment and Performance Bond a certified copy of his power of attorney authorizing him to do so. The surety's resident Florida agent must countersign the contract Payment and Performance Bond. The form of Payment and Performance Bond shall be as furnished by the Owner.

> 13.1.2 The Payment and Performance Bond must be written through surety insurers authorized to do business in the State of Florida as surety, with a rating of B-IX according to the latest edition of Best's Insurance Guide, published by A. M. Best Company, Oldwick, New Jersey. The Owner will not accept substituted securities for Payment and Performance Bond. Failure to timely provide the Payment and Performance Bond will be cause for forfeiture of the bid bond.

The contractor approached the defendant insurance agent to procure the bond. When the agent was unable to do so, the contractor suggested a company named Strategy Insurance Limited. The agent's principal submitted an application to Strategy, which agreed to issue the bond for a premium of $327,915.

The associations paid the premium directly to the agent via wire transfer. The agent retained a 10% commission and forwarded the remainder to Strategy. When the associations received the bond, they noticed that it listed Strategy's address in Barbados, West Indies. This raised a concern. It was determined that Strategy was not licensed to do business as an insurer in Florida, a contractual requirement.

And while the associations did not have cause to rely on the bond, they sued Strategy, the contractor, and the agent. They obtained a default judgment against Strategy, which is no longer in business. The associations entered into a settlement agreement with the contractor.

This left pending their claim against the agent. The fourth amended complaint against the agent included counts for: (1) negligent procurement of insurance; (2) a declaration that the bond was invalid and

unenforceable; and (3) unjust enrichment.

At trial, the jury found the agent's negligence was NOT a legal cause of damages to the associations. But, it awarded $32,000 (10% of the premium) to the associations on the unjust enrichment claim. The trial court entered a final judgment in accord with the jury's verdict, and declared that "the payment and performance bonds issued by [Strategy] were invalid and unenforceable."

From this judgment and declaration, the associations now appeal.

### ***The Jury Instruction on Damages***

The associations argue the trial court improperly instructed the jury on damages for their claim for negligent procurement of insurance. They argue that, while normally the measure of damages is the amount of the loss that would have been covered had insurance been properly obtained, the associations were due a refund of the $327,915 premium paid for the useless bond.

The agent responds that the trial court properly instructed the jury that the measure of damages in a negligent procurement of insurance claim is the loss that would have been covered had the insurance been properly obtained. Because the associations suffered no loss, they were limited to criminal and/or administrative penalties against the agent.

We review a trial court's decision on whether to give a jury instruction for an abuse of discretion. *Stokes v. Wynn*, 219 So. 3d 891, 894 (Fla. 4th DCA 2017).

The parties offered competing jury instructions on the proper measure of damages for the negligent procurement claim. The agent's instruction provided: "In an action for negligent procurement of insurance, the measure of damages is what would have been covered had the insurance been properly obtained." The associations' proposed instruction provided:

> Compensatory damage is that amount of money which will put [the Insured] in a position nearly equivalent to what would have existed, had [the Insurer] not breached its duty owed to [the Insured], thereby causing injury.

> Further, in an action for negligent procurement of insurance, the measure of damages where there is a loss is what would have been covered by insurance, had the insurance been

3

properly obtained. When no loss has occurred that would have been covered, if the insurance had been properly obtained, the measure of damages is the amount paid for the premium.

The trial court gave the agent's proposed instruction.

Where the parties enter into an agreement to procure insurance and there is a negligent failure to do so, an insurance broker may be liable for damages. *Gelsomino v. ACE Am. Ins. Co.*, 207 So. 3d 288, 292 (Fla. 4th DCA 2016). Florida case law provides that "'[t]he measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained.'" *Id.* (quoting *Mondesir v. Delva*, 851 So. 2d 187, 189 (Fla. 3d DCA 2003)).

A negligent procurement of insurance claim arises from section 626.901, Florida Statutes (2017), which provides:

> (2) If an unauthorized insurer fails to pay in full or in part any claim or loss within the provisions of any insurance contract which is entered into in violation of this section, any person who knew or reasonably should have known that such contract was entered into in violation of this section and who solicited, negotiated, took application for, or effectuated such insurance contract is liable to the insured **for the full amount of the claim or loss not paid**.

(Emphasis added).

The associations argue this statute and our case law are inapplicable because they only address situations where the insured suffers a loss that would otherwise have been covered had the proper insurance been obtained. Here, there was no claim or loss. Rather, the associations are seeking full reimbursement of their premium payment.

Florida has not yet addressed this issue, but other jurisdictions have.

> **[W]here no loss occurs the measure of damages has been stated to be the amount paid as the premium.** If the policy procured is defective because of the terms and coverage provided therein, the measure of damages has been held to be the amount for which the insurer would have been liable had proper insurance been effected.

4

*Simpson v. M-P Enters., Inc.*, 252 So. 2d 202, 207 (Miss. 1971) (emphasis added) (citations omitted).  The Virginia Supreme Court has applied the same measure of damages.  *Autumn Ridge, L.P. v. Acordia of Va. Ins. Agency, Inc.*, 613 S.E.2d 435, 437 (Va. 2005) ("We conclude . . . that when no loss has occurred . . ., the measure of damages for failure to procure insurance is the amount paid by the intended insured as the premium.").

In a very similar case, the Louisiana Court of Appeal held that "[c]ompensating [the subcontractor] by awarding it the amount it paid for the defective bonds . . . is a proper award of damages."  *Gulf Coast Bldg. Sys., Inc. v. United Am. Sur. Co., Ltd.*, 614 So. 2d 1360, 1365 (La. App. 3 Cir. 1993).

In Florida a negligent procurement of insurance action is statutorily authorized **where there is a loss during the time the insured holds the policy**.  § 626.901, Fla. Stat.  In a negligent procurement action, an unauthorized insurer's policy is still **enforceable** and is applied as such to cover any losses that were not covered by the policy.  *See* §§ 626.901(3), 627.418(1), Fla. Stat. (2017).  Thus, while the associations' policy was issued by an unauthorized insurer, the insurer would still be held responsible.  Here, however, the associations suffered no monetary loss during the construction.

The Legislature provided that "[n]o insurance contract entered into in violation of this section shall be deemed to have been rendered invalid thereby." § 626.901(3), Fla. Stat.  As such, the Legislature expressly made the unauthorized insurer's policies enforceable in a negligent procurement action.

The associations suggest that section 626.901 is inapplicable because their claim against the agent falls within general negligence.  But even under a general negligence standard, the associations are required to prove damages.  They simply cannot meet this burden because they sustained no loss during the construction.

We decline to adopt the damages law of foreign states where our Legislature has provided statutory remedies.  We find no error in the trial court's damages instruction to the jury and affirm on this issue.

### *The Evidentiary Issue*

The associations next argue the trial court abused its discretion in not admitting a consent order and the agent's admission of its principal's license suspension.  They argue the suspension was predicated on the

principal's violation of a statute that bars aiding and abetting unlicensed insurers and should have been admitted as evidence of negligence. The agent responds that the suspension was properly excluded as part of a settlement agreement between the principal and the Florida Department of Financial Services, pursuant to section 90.408, Florida Statutes (2017).

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, limited by the rules of evidence. *Yang v. Sebastian Lakes Condo. Ass'n, Inc.*, 123 So. 3d 617, 620 (Fla. 4th DCA 2013).

During discovery, the agent responded to the associations' request for admissions. The agent admitted that

1) its principal did not know that Strategy was unlicensed when he procured the bond for the project;

2) its principal did no investigation into whether Strategy was unlicensed;

3) it received a commission on the bond;

4) its principal had no intent to commit fraud or a criminal act in procuring the bond; and

5) its principal was disciplined and had his license suspended by the Florida Department of Business and Professional Regulation ("DBPR") for his conduct in procuring the bond.

When the associations attempted to admit the State's Consent Order and Settlement Stipulation, the trial court excluded the evidence based on section 90.408 relating to offers to compromise. The trial court however indicated that if the principal denied wrongdoing or knowing that Strategy was unauthorized to issue insurance, then it would open the door to discussion of his discipline.

Section 90.408 provides: "Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value."

The associations argue this section does not apply because the consent order is not an "offer," and the State's administrative proceeding, resulting in the consent order, is not the "claim" at issue. The agent responds that

it was an offer because the State sent the principal a letter offering that he receive a suspension of his insurance license and complete continuing education courses in lieu of a formal administrative complaint being filed. The principal agreed to these terms.

We disagree with the agent that *Jordan v. City of Coral Gables*, 191 So. 2d 38 (Fla. 1966), supports its position. There, our supreme court stated "that it was prejudicial error to allow the submission of evidence of settlement by defendant of the claim of a third party in the same accident . . . ." *Id.* at 38. This case is unlike *Jordan.* Here, there was a settlement in a prior administrative proceeding involving the State, unrelated to the lawsuit. And, section 8 of the consent order specifically provided: "This document is a public record and contains information which is routinely published by the Department."

The court erred in excluding the consent order and other admissions as none of them fall within the purview of section 90.408. Nevertheless, these errors were harmless. *See Special v. West Boca Med. Ctr.,* 160 So. 3d 1251, 1265 (Fla. 2014). Had the trial court admitted this evidence, it likely would have had no effect on the verdict because (1) there was already proof of the agent's negligence, and (2) the jury found **no loss** during the construction that would have entitled the associations to damages in their negligent procurement action.

The agent's principal testified that he did not do his due diligence in researching the insurer. He admitted the agency had no policies and procedures in place to check whether insurers were authorized to do business in Florida. He testified that he did not know whether Strategy was authorized to do business in Florida. He admitted he could have done more to prevent the problem.

In short, the agent's principal admitted his negligence. And yet, the jury found no loss due to the agent's negligence. It did however award the associations $32,000, the premium paid to the agent, on the unjust enrichment claim. It also appears the agent's principal was sanctioned by the DPBR.

For the foregoing reasons, we affirm.

*Affirmed.*

WARNER and FORST, JJ., concur.

\* \* \*

7

*Not final until disposition of timely filed motion for rehearing.*