# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2119

_____

LEAVITT RECREATION &
HOSPITALITY INSURANCE, INC.,

 Appellant,

 v.

FLORIDA CAVERNS R.V. RESORT,
LLC, d/b/a Florida Caverns R.V.
Resort at Merritt's Mill Pond,

 Appellee.

_____

No. 1D2023-3022

_____

FLORIDA CAVERNS R.V. RESORT,
LLC, d/b/a Florida Caverns R.V.
Resort at Merritt's Mill Pond,

 Appellant,

 v.

LEAVITT RECREATION &
HOSPITALITY INSURANCE, INC.,

 Appellee.

_____

On appeal from the Circuit Court for Jackson County.
Ana Maria Garcia, Judge.

July 30, 2025

KELSEY, J.

We previously consolidated these related cases for assignment to the same panel of judges, and now consolidate them for disposition. Case Number 23-3022 is Florida Caverns' appeal from a summary judgment dismissing its complaint with prejudice. Case Number 23-2119 is Leavitt's appeal from an order denying its motion for attorney's fees under a proposal for settlement. We reverse the summary judgment and remand for further proceedings on the merits. In light of that disposition, we decline to address the order denying fees, and dismiss that appeal as premature.

---

**Case No. 23-3022, Merits Dispute.**

Florida Caverns, a privately-owned company, owns and operates a park for recreational vehicles (RVs) near the Florida Caverns State Park in Marianna, Florida. As its name suggests, the State Park features a wet limestone cave system, which is open to public tours—the only Florida state park of its kind. Essential to the operation of the RV park are the RV hook-up towers—also called pedestals or power stations—which provide the RVs, as well as some tent-camping sites, with electricity and water at a minimum; and for RV sites, sewage; and in some sites also cable and Wi-Fi access.

When Florida Caverns purchased the RV park out of bankruptcy in September of 2018, its owner, Erwin Jackson, contacted Leavitt Recreation to secure commercial property insurance. Leavitt is a broker, a nationwide company that specializes in insurance for RV parks and related businesses. Mr. Jackson testified that he had obtained such insurance from Leavitt for another RV park he owned, and that policy covered the power stations. In dealing with Leavitt on the cavern RV park, Mr.

2

Jackson asked the agent to visit the property, but the agent declined and instead said that Google Maps or a similar electronic view of the park would suffice. Mr. Jackson provided information to the agent about the operations of the RV park and related business premises. Mr. Jackson testified that he also gave the Leavitt representative a detailed map of the RV park that showed all sites, identified the 200-plus sites with utility hook-ups, and showed the details of the services provided at each hook-up (including electric amperage available as well as water, sewer, internet, and cable). He testified that the agent expressly asked about utilities provided at the park sites. Mr. Jackson testified that he requested whatever insurance coverage would be adequate to protect against damage and loss to the business premises (i.e., not merely loss of income). He denied that he would have rejected additional coverage requiring a higher premium; he simply wanted adequate coverage.

Mr. Jackson testified in his deposition, over a hearsay objection, that after the hurricane hit and he called the insurer (not the agent) about the damages, the insurer's representative told him the power-station coverage had been available, and the agent should have told him if the coverage was going to be omitted. Mr. Jackson subsequently obtained insurance coverage for this property, which he testified included the power stations, from a different agency and insurer.

The Leavitt agent admitted that the company specializes in the RV-park-owners market, and that he acted as an agent for his clients like Mr. Jackson, in addition to acting as agent for insurance providers. It was part of his job to collect detailed information for underwriters' analysis; and to inform clients what coverages are and are not available, and what coverage they should consider getting. The Leavitt agent denied having received the park map from Mr. Jackson. The agent admitted that he suggested viewing the premises on a GPS satellite map and Google Maps, and did so.

The agent acknowledged that one of the inherent risks associated with campgrounds is their outdoor exposure. He acknowledged that Leavitt could and did offer coverage for damage to power stations; and if provided, that would be scheduled

3

separately within the policy. Per agency practice, the policy document did not specify all coverages that could have been included but were excluded. The agent at one point testified that he did not say anything specific to Mr. Jackson about this coverage, but later claimed broadly that they "went through" multiple coverages including power stations—though only by phone and not in writing—and Mr. Jackson elected not to obtain the coverage. Mr. Jackson vehemently denied having rejected the coverage.

The commercial insurance policy, titled "RV Park and Campground Application," was issued with an effective date of October 5, 2018. The policy did not expressly specify whether power stations were included or excluded. It listed some available but not-included coverages, but that list did not include power stations. The Leavitt agent later testified that some power station damage might be covered under other categories in the policy.

On October 10, 2018, just days after the insurance contract was effective, Hurricane Michael passed directly over Florida Caverns, causing extensive damage to the RV park. The Leavitt agent e-mailed Mr. Jackson that the issued policy "may not have included insurance coverage for the premises utility pedestals." In response to Florida Caverns' claim for benefits under the insurance policy, the insurer denied coverage for damage to the RV power stations, asserting that no such coverage had been included in the policy.

Florida Caverns filed suit, expressly alleging that it sustained damages related to its power station sites. It alleged it had requested comprehensive coverage that would have and should have encompassed the power stations, and that it was customary in the industry to include such coverage because of the inherent necessity of the power stations to operating an RV park. The complaint further alleged that, if the policy excluded power-station coverage, Leavitt as broker had negligently failed to include that coverage, and that Florida Caverns would have received insurance proceeds covering the damage to the power stations but for Leavitt's failures.

Leavitt answered the complaint and asserted twenty-six affirmative defenses. Among those defenses, Leavitt admitted that

4

"the measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained." Significantly, Leavitt admitted that power-station coverage was available. But Leavitt asserted that Florida Caverns was estopped to pursue these damages because Florida Caverns bore the burden to identify any inadequacies in the policy upon its issuance, and bring the inadequacies to Leavitt's attention for correction. Alternatively, Leavitt alleged that Florida Caverns concealed or misrepresented information about the condition of its power stations, which Leavitt claimed were old, deteriorated, and uninsurable (which would appear to relate to damages and not liability). Further, Leavitt alleged Florida Caverns was informed about available coverage for the power stations, but expressly declined it to save money on the premium, and had declined such coverage for other similar properties.

During discovery—which was not completed before entry of the judgment on appeal—Florida Caverns asserted it believed all of the RV hook-ups were operational, but admitted it did not know the exact condition of each power station, which it acknowledged could affect cost of coverage. Florida Caverns alleged that it relied on Leavitt's expertise in providing appropriate coverage to RV parks, and believed the site map showing the sites and power stations provided all information needed for the coverage analysis. Florida Caverns requested to be provided whatever coverage was needed. It relied on its prior dealings with Leavitt for the same coverage, which had included the power stations. Florida Caverns assumed the stations would be within the scope of requested coverage because they were inherently essential to the operation of any RV park (as opposed to a mere plot of land for parking without amenities), and presumptively would be covered according to custom in the industry as well as the owner's direct experience in securing similar coverage. Leavitt's agent admitted that operable power stations are a critical component of RV-park premises and operations.

Florida Caverns identified the storm damages as including power stations damaged or destroyed by wind force, falling trees, and wind-blown objects and debris. Mr. Jackson testified that the damage required tearing out and then replacing the old power sites and wiring, replacing the actual RV connections, including water

5

hook-ups, and internet and cable on sites that had that capability. Florida Caverns provided Leavitt itemized damages it incurred to repair the power stations after the hurricane. It paid $496,703 to repair 91 RV power stations, plus $494,746 to rebuild 83 other power stations. It also spent $106,067 to repair or replace 27 power stations at tent sites. The total costs for the 201 power stations alone was $1,097,516.40. Florida Caverns secured new commercial property insurance from another insurer, which it maintained included coverage for power station damage and loss, for an annual premium of $8,777.21. The parties retained expert witnesses as to amount of damages, but had not deposed them before the trial court entered summary judgment on the issue of entitlement.

Leavitt's motion for summary judgment argued—and Leavitt argues here—that as a matter of law, it was entitled to summary judgment because Florida Caverns was required to—but did not—produce an actual insurance policy issued *before Hurricane Michael hit* that covered RV power-station damage, to prove that such coverage was then available. Leavitt also argued there were no other triable issues of fact. Leavitt raises the same arguments on appeal. We reject them both.

Florida Caverns was not required, as a prerequisite to its lawsuit, to produce an issued insurance policy from just before Hurricane Michael hit that expressly covered power-station damage. Looking at the available evidence first, we observe that Mr. Jackson testified that such coverage was available at the relevant time, that he had secured it on another property, that he secured it on this property shortly after these issues arose, and that his negotiations with Leavitt expressly contemplated precisely this coverage. Significantly, the Leavitt agent also testified that this coverage was available under the very policy at issue, and that he expressly advised Mr. Jackson to secure that coverage, but that Mr. Jackson declined it to save on the premium. With its own agent testifying that the disputed coverage was available in the very insurance policy at issue, Leavitt would be hard-pressed (i.e., estopped) to argue otherwise.

Even if additional evidence were necessary, Florida Caverns had other evidence demonstrating that the coverage was available in other policies at the pertinent time, and could have obtained

6

additional supporting evidence if it had been allowed to do so. Discovery was still underway—at a time when Florida Caverns' trial counsel had just recently died and new counsel stepped in. Leavitt had produced additional documentary evidence that Florida Caverns could have used, but it was not produced until after the summary-judgment cutoff had passed. Those timing issues, followed by entry of the judgment on appeal, prevented Florida Caverns from doing any more to prove the availability of this coverage—assuming any more was necessary. We conclude it was not.

We do not interpret the governing cases on proof of availability nearly as strictly as Leavitt advocates. Rather, the cited cases illustrate one way to prove—at trial—that the insurance at issue was available—without precluding other avenues of proof, and without addressing a pre-trial procedural posture like this one. Significantly, none of those cases involved an admission from the pertinent insurance agent that the exact coverage in question was indeed available, as was the case here.

As a general rule, "[a]n insurer may be liable for coverage not included in a written contract if its agent failed to provide it or to notify the insured that such coverage was excluded from the policy issued." *Burns v. Consol. Am. Ins. Co.*, 359 So. 2d 1203, 1207 (Fla. 3d DCA 1978); *see also deMarlor v. Foley Carter Ins. Co.*, 386 So. 2d 22, 23 (Fla. 2d DCA 1980) ("Even when he is not to blame for the failure to obtain coverage the agent may nevertheless become liable for damages if he fails to inform his principal that the requested insurance has not been procured."). The party seeking to establish that improperly omitted insurance coverage was available must only show that "the requested coverage was generally available in the insurance industry when appellee obtained coverage for appellant." *Morgan Intern. Realty, Inc. v. Dade Underwriters Ins. Agency, Inc.*, 524 So. 2d 451, 452 (Fla. 3d DCA 1988).

Leavitt argues for a vastly stricter standard and timeframe of proof: the pre-trial presentation of an actual insurance contract, dated before the Florida Caverns hurricane loss, and providing the coverage missing from the Florida Caverns policy. To start, this argument fails to take into account Leavitt's agent's admissions

7

that power-station coverage was available; and that its agent discussed power-station coverage with Mr. Jackson, but believed Mr. Jackson rejected it because he did not want to pay the additional premium. These admitted facts moot Leavitt's argument.

Further, the cases on which Leavitt relies are factually distinguishable. This Court in *Capelle v. Gamble*, 733 So. 2d 534, 535 (Fla. 1st DCA 1998), addressed only one issue: the proposed insureds' failure to present evidence at trial that their flood damages would have been covered by an omitted flood-insurance policy. Those insureds did not establish what such a policy would cover, nor did they provide an example of such an available policy or testimony about what such a policy would have covered. *Id.* Importantly, the determinative point of time was "at trial." *Id.* The Florida Caverns—Leavitt dispute is far from "at trial," and the record already developed establishes that the parties agree that power-station coverage was available. *Capelle* is inapposite.

Leavitt also relies on *Mondesir v. Delva*, 851 So. 2d 187 (Fla. 3d DCA 2003), which again is inapposite, both factually and legally. Mondesir, the agent, assured Delva, the insured business owner, that insurance coverage was in place to cover the contents of Delva's convenience store business—when in fact it was not. *Id.* at 189. As in *Capelle*, the point of reference was "at trial." At trial, at which Mondesir did not personally appear or present evidence through a representative, the insured presented the certificate of fire insurance that had been issued in error, evidence that the desired coverage had not actually been secured, and evidence of covered losses. *Id. Mondesir* does not hold what Leavitt seems to think it holds; i.e., that a pre-damage policy providing the disputed coverage must be produced even if an agent testifies the coverage was available.

Finally, Leavitt relies on *Gelsomino v. ACE Am. Ins. Co.*, 207 So. 3d 288 (Fla. 4th DCA 2016). Again in this case, full discovery and trial were completed. *Id.* at 291–92. At trial, the plaintiff introduced the insurance policy that should have covered his damages, but was mistakenly issued for a related but incorrect business entity. *Id.* at 290. The trial court granted a directed verdict for the broker, but on appeal, the Fourth District reversed

8

because—again, *at trial*—the plaintiff introduced both the inapplicable policy and evidence of damages sustained from lack of coverage. *Id.* at 293. This case, too, is unhelpful to Leavitt.

We find no authority that would have required Florida Caverns to produce, at the summary judgment stage, an executed, pre-Michael policy providing power-station coverage and establishing a base for calculation of damages. The deposition testimony before the court established that the coverage was available, that both Mr. Jackson and the Leavitt agent knew it was available, that Mr. Jackson claimed he wanted it, and that the agent claimed Mr. Jackson said he did not want it. The parties' contract—the policy—does not on its face include the coverage. Producing an actual policy covering power stations was unnecessary. Further, even an agent's failure to *tell* Mr. Jackson the coverage was missing is actionable, and no policy could be required to prove that negative. *See E&R Env't Servs., LLC v. Sihle Fin. Servs., Inc.,* 396 So. 3d 624, 629 (Fla. 5th DCA 2024).

Summary judgment was granted improperly.

REVERSED.

———————————————

**Case No. 23-2119, Proposal for Settlement.**

Leavitt served a proposal for settlement on Florida Caverns, which was deemed rejected when Florida Caverns did not accept it within 30 days. *See* § 768.79, Fla. Stat. (2020); Fla. R. Civ. P. 1.442. After entering partial summary judgment against Florida Caverns as discussed above, the trial court denied Leavitt's motion for fees on the grounds that the proposal was ambiguous. Because we reverse the merits judgment and remand for further proceedings, this issue is not ripe for adjudication. Case No. 23-2119 is DISMISSED.

NORDBY and LONG, JJ., concur.

9

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jorge L. Cruz-Bustillo and Michele A. Lo Presti of Chartwell Law, Miami; Albert J. Wollerman and Todd J. Sanders of Chartwell Law, Tallahassee, for Leavitt Recreation & Hospitality Insurance, Inc.

Jennifer A. Winegardner, Michael Rayboun, and Elmer C. Ignacio of Rayboun Winegardner, PLLC, Tallahassee, for Florida Caverns R.V. Resort, LLC d/b/a Florida Caverns R.V. Resort at Merritt's Mill Pond.